JEREMIAH REAGAN *vs.* JOHN CASEY.

Suffolk. November 23, 1893. — January 5, 1894.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & BARKER, JJ.

*Personal Injuries — Master and Servant — Fellow Servant.*

A., who was employed by a city as a laborer in digging a trench for a sewer, was injured by the negligence of B., the driver of a team, while backing the team, which was owned by C., who let the team and driver to the city for a certain sum per day. In an action by A. for his injury against C., it appeared that D. had general supervision of the work of digging the trench, and of the men engaged in it, and the right to direct where the teams should back up and the place to which the dirt should be carted. The plaintiff testified that " he had seen the defendant there two or three times, and saw him speak to " B. ; and the defendant, when asked, " Did you exercise any control at all after the team left the barn, or at any time while on the sewer ? " answered, " I passed there three or four times." *Held*, that there was evidence which fairly warranted the jury in finding that B. was, at the time of the injury, the defendant's servant ; and that the defence that he was a co-servant could not avail.

TORT, for personal injuries occasioned to the plaintiff by the alleged negligence of the defendant's servant. Trial in the Superior Court, before *Blodgett*, J., who allowed a bill of exceptions, in substance as follows.

The plaintiff testified that, in May, 1892, he was at work for the city of Boston, filling, shovelling, and doing whatever he was told to do by his boss, on a sewer being put into the extension of Commonwealth Avenue; that, on the day of the accident, dirt was being taken from the trench, shovelled into carts and carried away; that the plaintiff and a teamster were filling up one cart; that the plaintiff was on the left-hand side of the cart, with his back towards the horses, pitching in the dirt, with

his left hand next to the team, when a teamster named Sullivan, driving another team, backed up against the plaintiff, hitting his back, pushing him against a post, and causing the injuries complained of; that he had seen the defendant there two or three times, and saw him speak to this teamster; that William O'Brien was the foreman for the city at this place; that the carts were all under him, "he sent the carts up there to dig and dump"; and that both he and the carts were under the orders of O'Brien.

The defendant, called as a witness by the plaintiff, testified that he had first learned of this accident from his teamster, Sullivan; that his team had gone to work for the city on this sewer in February, 1892, and had continued so working until the time of the accident, he being paid six dollars per day for the double team and the man; that while the team was at work on Commonwealth Avenue, neither the team nor the driver was in any way under his control after it left the barn in the morning until he got it in there again, but was under O'Brien's control, he understood; and that the defendant gave no orders to Sullivan while he was there, and did not give him, before he went, any directions as to what he should do while he was there. He was then asked the question, "Did you exercise any control at all after the team left the barn, or at any time while on the Commonwealth Avenue sewer?" To which he answered, "I passed there three or four times."

Thomas J. Griffin testified that he was a laborer at work on this sewer, and saw the team back in and injure the plaintiff; that he was himself under O'Brien's directions, and so were the plaintiff and the teams, and had been all the time the work was going on.

Dennis Kelly testified that he was at work in the place in question for the city, and heard the plaintiff "holler," and saw that he had been pushed up against the post; that he was himself under O'Brien's orders, but did not know whether O'Brien was in charge of the teamsters or not; and that it was supposed that O'Brien was in charge of the whole of that part of the work.

William O'Brien testified that he was employed by the city as foreman of construction on this sewer; that there were four teams on the job, and two of them had been hauling sand and gravel, and two more had been hauling the surplus dirt away,

from the trench; that this surplus earth was hauled away and dumped somewhere where there was need of filling; and that he had a right to direct where the earth should be put and dumped.

On cross-examination, he was asked by the defendant the following question: "You gave the orders both to the men getting it out and also to the drivers?" To which he answered, "I gave orders for all the work." He was then asked as follows: "Including the excavators, the men at work there, and the men who had charge of the teams?" His answer was, "Yes."

Timothy Sullivan testified, for the defendant, that he was the teamster driving the cart which caused the accident; that while driving this cart he was under O'Brien's orders; that nobody else gave him any orders there; that he was not under the orders of the defendant while he, the witness, was there, after he had left the barn; that he had his horse on the street ready to get a load, looked behind the cart and saw the plaintiff, cried to him to get out of the way, and backed up thinking the man had moved, hit him, and backed him up against the leg of the machine.

The defendant asked the judge to give the following rulings:

"1. The jury cannot find a verdict for the plaintiff against the defendant, unless the defendant was, at the time of the injury to the plaintiff, the master of the teamster Sullivan, that is, unless the defendant was then in the control of the work done by Sullivan and of Sullivan's actions in the performance of that work; and there is no evidence on which the jury can properly find these facts; and so their verdict must be for the defendant. 2. On the evidence, the defendant is not liable in this action. 3. On all the evidence, the plaintiff and the teamster Sullivan were fellow servants, engaged in the common employment of the same master; and the plaintiff' cannot maintain this action for the alleged negligence of Sullivan."

The judge refused to give the rulings requested, and instructed the jury upon this part of the case as follows:

"If there was negligence on the part of the driver, and no negligence on the part of the plaintiff, the liability of the defendant will depend upon the question whether the driver, at the time of the injury to the plaintiff, and in respect to the

matter which caused the injury, was acting as a servant of the defendant. The contention of the defendant is, that, when the plaintiff was injured, the driver was not his servant, and that he was for the time being the servant of the city. It is not difficult to conceive of a case where the hiring by the city would relieve the defendant from liability for negligence during such hiring on the part of the driver. Let me suppose two cases: A. is the master, B. the servant, and C. the hirer. C. contracts with A. for the use and hiring of A.'s cart, horses, and servant for a day or a week. By the terms of the hiring, it is agreed that C. may make such reasonable use of the cart and horses as he sees fit, and may require B. to do such work and in such manner as C. may direct; that C. may use the cart himself or let his neighbor use it; that he may use the horses together or separately, use them himself or let another use them, drive them upon the highway, or plough his land, or do any other work with them of the kind that horses ordinarily do; that C. may set the servant at work driving A.'s horses or other horses, he doing any other work which C. may choose to have done. If, in the case supposed, B., while engaged in driving A.'s horses, is negligent and causes injury to D., D. may maintain an action against C., and cannot maintain an action against A.

" Let me state another case: A. has a hack, a span of horses, and a man in his employ named B. C. wishes to give his family a ride, and contracts with A. to furnish at a given price per day the hack, horses, and B. as the driver, to be used in carrying C. and his family to such place or places as C. may direct. If the driver is negligent in the management of those horses, and because of such negligence D. is injured, C. would not be liable, but A., who furnished the horses and the hack and the driver, would be liable.

" Now you must determine whether the case you are trying falls within the class of cases of which the case I first supposed is the type, or within the second class of cases. If within the first class of cases, the action cannot be maintained. If it comes within the second class of cases, the case I have supposed of the hiring of the hack and the span of horses and the driver to drive those horses, the action can be maintained.

"Perhaps, however, the question can be stated more briefly, and such statement may aid you in determining what your finding should be in regard to the second question of fact in the case. Inquire who had the management of the horses, as to the manner of driving them, Sullivan or O'Brien, at the time when the plaintiff was injured. You recollect what the testimony is as to the contract between O'Brien and the defendant, and what O'Brien did with reference to the teams which were hired. Now, as between Sullivan, the driver, and O'Brien, the agent and representative of the city, who had the right to say how those horses should be driven, the rate of speed, whether at a walk or a trot? who had the right to say which horse should be placed upon the nigh side and which upon the off side, and how the horses should be harnessed, Sullivan or O'Brien? If, as between Sullivan and O'Brien, you find that Sullivan was the man who was intrusted with the care and management of the horses, and who had the right to say how the horses should be driven, then this action can be maintained, if the other elements are proved; because, if Sullivan had any such right, he had it, not as the owner of the horses and of the cart, but because he was the agent and representative of the owner, in other words, the agent of the defendant in respect to that matter."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*H. N. Sheldon*, for the defendant.

*W. H. Brown & G. R. Swasey*, for the plaintiff.

MORTON, J. The question in this case is whether there was evidence that fairly warranted the jury in finding that the driver of the team was at the moment of the injury to the plaintiff the servant of the defendant. We think there was. O'Brien had general supervision of the work of digging the trench, and of the men engaged in it, and had the right to direct where the teams should back up, and the place to which the dirt should be carted. But we think that there was evidence that in the management and control of the team while engaged in doing the work for which it and the driver had been hired, the driver was the servant of the defendant. The plaintiff testified that "he had seen the defendant there two or three times, and saw him speak to this teamster"; and the defendant when asked, "Did you exer-

cise any control at all after the team left the barn, or at any time while on the Commonwealth Avenue sewer?" answered, " I passed there three or four times," which the jury may have considered so equivocal as to warrant an inference that he did exercise control. The driver was the general servant of the defendant, and was paid by him, and not by O'Brien, and for aught that appears the driver fed, harnessed, and unharnessed the horses, and managed and drove them as he thought best; and there is no evidence that fairly warrants the inference that O'Brien controlled or directed him in any of these respects. One object in hiring a team with a driver may have been to have some one who would be responsible for the management of the horses. We do not think that, if a third person had been injured by the carelessness of the driver while going to or from the dumping ground, O'Brien would have had such exclusive control of the driver that the city would be liable. See *Kimball* v. *Cushman*, 103 Mass. 194 ; *Huff* v. *Ford*, 126 Mass. 24.

The defence that Sullivan and the plaintiff were co-servants cannot avail. In order to make that defence available, it must appear that the plaintiff and the driver were engaged not only in working to a common end, but that at the time of the injury complained of, and in doing that which caused the injury, the driver was subject to the control and direction of O'Brien. *Morgan* v. *Smith*, 159 Mass. 570, 571. In the case of *Johnson* v. *Boston*, 118 Mass. 114, on which the defendant relies, the plaintiff was subject to the exclusive control of the defendant's foreman when engaged in the work in which he sustained the injury complained of, and was a fellow servant with others under the charge of the same foreman, and engaged in excavating the trench.

*Exceptions overruled.*