[S. F. No. 7422. In Bank.—June 29, 1916.]

WESTERN INDEMNITY COMPANY (a Corporation), Petitioner, v. A. J. PILLSBURY et al., as Members of and Constituting the Industrial Accident Commission of the State of California, Respondents.

WORKMEN'S COMPENSATION ACT—FINDING OF INDUSTRIAL ACCIDENT COMMISSION—CONFLICT OF TESTIMONY.—Where there is a substantial conflict of testimony regarding the *status* of a person claiming compensation, the finding of the Industrial Accident Commission will not be disturbed on *certiorari.*

ID.—CONTRACT TO FURNISH TEAMS—INDEPENDENT CONTRACTOR—CONTRACTOR DRIVING OWN TEAM.—A person engaged in the business of teaming and grading, who undertakes to furnish a railroad contractor, for an indefinite period, with teams and drivers for use on a specified work, at a stipulated aggregate sum per day for each team, wagon, and driver, is not an employee of the contractor, within the meaning of section 14 of the Workmen's Compensation Act, notwithstanding he may drive one of his own teams.

ID.—LIMITED CONTROL OVER TEAMSTER—DIRECTION AS TO MATERIALS TO BE HAULED.—The power of direction possessed by the foreman of

the railroad contractor over the person furnishing the teams in respect of the materials to be hauled was not such "control" of the latter as to make his *status* that of an employee.

ID.—INDEPENDENT CONTRACTOR—DISTINCTION BETWEEN AUTHORITATIVE CONTROL AND SUGGESTION.—The true test of a contractor is that he renders services in the course of an independent occupation, following his employer's desires in the results, but not in the means used; but in weighing the control exercised, a distinction must be observed between authoritative control and mere suggestion as to detail or the necessary co-operation where the work furnished is part of a larger undertaking.

ID.—LIBERAL CONSTRUCTION OF ACT—ESTABLISHED DEFINITIONS NOT TO BE IGNORED.—While the Workmen's Compensation Act is to be liberally construed, the courts should not, in determining the legislative intent from the language used, ignore the meaning attached thereto in pre-existing laws.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of the State of California.

The facts are stated in the opinion of the court.

Eugene F. Conlin, for Petitioner.

Christopher M. Bradley, for Respondents.

MELVIN, J.—*Certiorari* directed to the Industrial Accident Commission to review the proceedings leading to an award made to H. H. Stevens against the Western Indemnity Company. H. S. Tittle was a defendant before the Industrial Accident Commission, but the Western Indemnity Company, his insurance carrier, assumed all liability which might exist against its codefendant.

H. S. Tittle was a contractor engaged in performing work for the city and county of San Francisco in connection with the municipal railway line on Van Ness Avenue. Mr. Stevens called upon Mr. Tittle and, presenting his card which announced him as one engaged in "Teaming and Grading," offered to furnish teams and drivers for the work, if any should be required, at six dollars a day for team, wagon, and driver. No contract was made at that time, but about a week later Mr. Tittle notified Mr. Stevens that he required a team. One was furnished, Mr. Stevens driving it himself. About a

week later, Stevens was notified that another team was needed. He agreed to furnish, and did furnish, a second driver, team, and wagon at six dollars a day, employing the driver himself and paying him three dollars a day.

The Industrial Accident Commission found that Mr. Stevens was an employee, in that he had "agreed to provide a team and wagon and drive it himself." He was injured and demanded compensation. It is contended by petitioner here that the finding of the commission to the effect that Stevens agreed to drive the team himself is entirely without support in the evidence, and that under the facts as shown without conflict he was an independent contractor.

It is the rule that where there is a substantial conflict of testimony regarding the *status* of a person claiming compensation the finding of the commission will not be disturbed. We must examine the record carefully, therefore, and if we find any evidence to support the finding that Stevens was an employee, we should not annul the award. If he was not an "employee," unquestionably the commission had not authority to award compensation, because the power of the legislature only extends to the creation and enforcement of a liability on the part of employers to compensate their employees. (*Carstens* v. *Pillsbury, ante*, p. 572, [158 Pac. 218].)

There is no substantial conflict in the testimony. It is undisputed that the contract between Stevens and Tittle did not cover any definite period. It is also undisputed that the latter's foreman directed Stevens and his driver in the matter of the materials to be hauled. There was no agreement regarding the bulk of matter or the number of loads per day, but each wagon was to be used for the period of eight hours a day both in removing the rubbish and surplus sand that accumulated from Tittle's work as a general contractor constructing the railway tracks and also in hauling lumber and rock for the use of Tittle. But there is no word of evidence that Stevens was employed personally to drive either of his teams. He was to furnish the means of accomplishing certain results—namely, drivers, teams, and wagons—and there was no element of personal service in the contract. It is true that he did drive one of his own wagons, but if he had desired to devote a day to other occupations, his contract with Tittle would have been fully performed if he had put any competent man in charge of the horses he had been driving,

because he had been required to furnish "teams" (which included wagons and drivers). Neither Mr. Stevens nor the driver of his second team was listed as an employee on the books of Mr. Tittle (who did business under the name of "Tittle Company"), the account being carried as "H. II. Stevens teams." At the end of each week an envelope was given to Stevens containing pay at the rate of six dollars per day for each team, neither he nor his driver receiving any segregated sum from Tittle as wages. It is clear that the contract was not one between employer and employee in the sense of section 14 of the Compensation Act, but one by which Mr. Stevens agreed to furnish facilities for doing a certain sort of work. There was no stipulation between the contractor who was performing the work for the municipality and Stevens regarding wages. · A lump sum was paid for each team and Mr. Tittle knew nothing, so far as the testimony reveals, regarding the amount of wages paid Stevens' driver. Neither did he pay Mr. Stevens a certain sum for use of the teams and another sum for personal services. The amount paid was twelve dollars a day for two drivers, two teams, and two wagons. After the accident another driver was substituted for the injured man. He continued to perform the work just as his employer had done it, and his name was never given to the Tittle Company nor entered upon the books, but the money due for the two teams was paid to the wife of the injured man.

Section 14 of the Compensation Act provides that "The term 'employee' as used in sections 12 to 35, inclusive, of this act shall be construed to mean: Every person in the service of an employer as defined by section 13 hereof under any appointment or contract of hire or apprenticeship, express or implied, oral or written." A "contract of hire" means a contract for personal services, and this is emphasized by the fact that the basis of compensation provided by the act is the amount of wages earned. Doubtless there could be a contract of service without stipulated wages, but there could be no · employee unless his personal services were rendered to the employer, and since wages are generally paid for personal services, wages or salary are made the criteria of compensations given to injured employees. The word "servant" is generally synonymous with the word "employee" (35 Cyc. 1431; 3 Words and Phrases, 2369, 2376; 7 Words and Phrases, 6426;

*Hand* v. *Cole*, 88 Tenn. 400, [7 L. R. A. 96, 12 S. W. 922]),
and section 2009 of our Civil Code defines a servant as fol-
lows: "A servant is one who is employed to render personal
service to his employer, otherwise than in the pursuit of an
independent calling, and who in such service remains entirely
under the control and direction of the latter, who is called
his master."

Thus reasoning from the definition furnished by the act
itself, it seems clear that the man who received an award
of compensation was not an "employee" of the railroad
contractor.

But it is urged with much force that since the foreman for
Tittle Company directed Stevens in the matters of the mate-
rials to be hauled, the latter was not an independent con-
tractor—that the test of what constitutes independent service
lies in the control exercised, and that the driver being under
the supervision of the foreman was therefore an employee of
Tittle. It is true that many authorities specify "control"
of the person performing work as the means of differentiat-
ing service from independent employment. The test of "con-
trol," however, means *"complete* control." For example, the
citizen who hires a taxicab to take him to a certain place exer-
cises that amount of control over the driver, but he does not
thereby become the man's employer. Labatt, in his work on
"Master and Servant," second edition, section 25, says: "It
is well settled that, where one person is performing work in
which another is beneficially interested, the latter may exer-
cise over the former a certain measure of control for a defi-
nite and restricted purpose, without incurring the responsi-
bilities, or acquiring the immunities, of a master, with respect
to the person controlled." In *Driscoll* v. *Towle*, 181 Mass.
416, [63 N. E. 922], the court said (Mr. Chief Justice Holmes
delivering the opinion):

"In cases like the present, there is a general consensus of
authority that, although a driver may be ordered by those
who have dealt with his master to go to this place or that, to
take this or that burden, to hurry or to take his time, never-
theless in respect to the manner of his driving and the control
of his horse he remains subject to no orders but those of the
man who pays him. Therefore, he can make no one else liable
if he negligently runs a person down in the street. (*Huff* v.

*Ford,* 126 Mass. 24, [30 Am. Rep. 645] ; *Reagan* v. *Casey,* 160 Mass. 374, 379, [36 N. E. 58] ; *Jones* v. *Liverpool,* 14 Q. B. Div. 890; *Waldock* v. *Winfield* [1901], 2 K. B. 596; *Quarman* v. *Burnett,* 6 Mees. & W. 499; *Laugher* v. *Pointer,* 5 Barn. & C. 547, 558; *Murray* v. *Dwight,* 161 N. Y. 301, [48 L. R. A. 673, 55 N. E. 901] ; *Lewis* v. *Long Island R. R. Co.,* 162 N. Y. 52, 66, [56 N. E. 548] ; *New York etc. Ry. Co.* v. *Steinbrenner,* 47 N. J. L. 161, [54 Am. Rep. 126] ; *Joslin* v. *Grand Rapids Ice Co.,* 50 Mich. 516, [45 Am. Rep. 54, 15 N. W. 887] ; *Little* v. *Hackett,* 116 U. S. 366, [29 L. Ed. 652, 6 Sup. Ct. Rep. 391].)'' That was a case in which it was sought successfully to hold responsible a person engaged in a general teaming business for injuries inflicted by the carelessness of his driver, who at the time was, and for some time theretofore had been, carrying property for an electric light company. The case of *Reagan* v. *Casey,* cited *supra,* was also one in which the injury was inflicted by the negligence of a driver of a team furnished by the owner for a specified sum per day to the city and subject to the orders of the city's foreman. The driver was paid by the owner of the team and wagon and not by the city. It was held that the employer of the driver and *not* the city was responsible. The same rule is announced in *Hedge* v. *Williams,* 131 Cal. 455, [82 Am. St. Rep. 366, 63 Pac. 721, 64 Pac. 106], in which it was held that a firm of plumbers engaged by the defendant to repair a tank on his property were independent contractors, and that defendant was not liable for an injury inflicted upon his servant by reason of the carelessness of the servant of the subcontractor. In that case confusion arose in the minds of some of the counsel in the case from the fact that defendant's foreman was also a member of the firm of plumbers. As foreman he directed the repairer to do the work on the tank, but this court held that there was no contractual relation between defendant and Fontaine, who was sent to mend the tank, and that the latter could not be considered the servant of the former. In the case at bar confusion arose out of the fact that Stevens drove his own team, but we see nothing in that fact which made him a servant and not a contractor. The commission found that Tittle had the right and power of discharging the applicant (Stevens) *"and* ruling his team off the work'' if the services rendered were unsatisfactory, but the conjunc-

tive is very significant. Tittle could not, under the contract, discharge Stevens *or* dispense with the services of the team. The agreement was not thus divisible, and clearly Stevens was not the employee of Tittle. The same distinction between a servant and an independent contractor is observed in *Bennett* v. *Truebody,* 66 Cal. 510, [56 Am. Rep. 117, 6 Pac. 329].

If Mr. Stevens' driver who had charge of the other wagon had met with an accident, his employer would have been liable, and the assumption by Stevens of a dual role of contractor and driver did not shift the liability.

It has been said that the true test of a contractor is that he renders service in the course of an independent occupation, following his employer's desires in the results but not in the means used (1 Shearman & Redfield on Negligence, 6th ed., 396), but in weighing the control exercised we must carefully distinguish between authoritative control and mere suggestion as to detail or the necessary co-operation where the work furnished is part of a larger undertaking. (*Standard Oil Co.* v. *Anderson,* 212 U. S. 221, 222, [53 L. Ed. 480, 29 Sup. Ct. Rep. 252].) The same principles are announced in *Fink* v. *Missouri Furnace Co.,* 82 Mo. 276, [52 Am. Rep. 376]. In *Chisholm* v. *Walker & Co.,* 2 B. W. C. C. 261, a case very much like the one at bar, arising under a workmen's compensation statute, it was held that the man who received a certain sum per day for the work of himself and his horse was not engaged in a "contract of service." A similar ruling was made in *Ryan* v. *County Council of Tipperary,* 5 B. W. C. C. 578. *Spiers* v. *Elderslie S. S. Co.,* 2 B. W. C. C. 205, was a case in which a workman engaged by one Williamson, a subcontractor, to work in removing scales from boilers on a ship was injured. It was held that the ship owner was not liable.

It is suggested that inasmuch as the statute enjoins upon the court liberal construction we should ignore common law and other definitions, and should, in determining who are and who are not employees, regard only decisions under compensation acts. *In re Rheinwald,* 168 App. Div. 425, [153 N. Y. Supp. 598], is cited as authority for this position, although counsel for respondents frankly admits that the New York supreme court has taken very advanced ground in that decision. With all due respect to the ability and learning of

the majority of the appellate division of the supreme court of New York, we must say that we can find no satisfactory answer to the dissenting opinion of Mr. Justice Lyon, in which Mr. Justice Howard concurred, arguing that under the undisputed facts Rheinwald was an independent contractor as held by the compensation commission. This court has always endeavored to construe the Workmen's Compensation Act liberally and with a view to carrying out its benevolent purposes, but we cannot see why we should discard the wisdom and learning of the past in our efforts to decide what the legislature intended by the language used. Especially should we avoid all temptation to stretch the law to cover individual cases where those demanding compensation arouse our sympathy. This man to whom compensation was given was badly injured, but we should not for that reason shut our eyes to the fact that he was an independent contractor and not an employee. The very strength and propriety of compensation statutes rest in the fact that where a business is charged with the care of injured employees, the hirers in that business of men and women whose daily tasks place them in jeopardy may insure against the liability imposed by the law. It would be unfair to the employers, unfair to the insurers, and unfair to the legitimate beneficiaries of the statute for us to try by every devious twist of interpretation to uphold every award made, merely because the person seeking it might be unfortunate.

For the reasons set forth above the award is annulled.

Henshaw, J., Lorigan, J., Sloss, J., and Angellotti, C. J., concurred,