ALBERT PACKETT v. MORETOWN CREAMERY COMPANY, W. C.
FLYNN, AND THE TRAVELERS INSURANCE COMPANY.

October Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed January 17, 1917.

*Workman's Compensation Act—Employment—Compensation.*

Aside from the provisions of section 63 (a) of the Workman's Com-
pensation Act, (No. 164, Acts 1915), the statute, being remedial
in character, is to be liberally construed to effectuate its manifest
purpose.

A workman, employed by a building contractor in the erection of a
building for a creamery company, under a contract therefor be-
tween the company and the contractor and paid by checks drawn
by the company to the order of the contractor and by him indorsed
and delivered to the workman, is not engaged in work pertaining
to the business, trade or occupation of the creamery company,
carried on by it for pecuniary gain, and so is not the employee of
the company and entitled to receive compensation from it for
injuries received while so employed, under the provisions of the
Workman's Compensation Act, No. 164, Acts of 1915.

APPEAL by the Moretown Creamery Company from an award
of the Industrial Accident Board, holding that the applicant was
entitled to compensation from the Moretown Creamery Company,
under the provisions of the Workman's Compensation Act, No.
164, Acts of 1915, for injuries received while engaged in the con-
struction of a building for the Creamery Company. The opinion
fully states the case.

*F. B. Thomas* and *Dunnett & Shields* for the Moretown
Creamery Company.

The applicant was in no sense employed for the purpose of
the trade or business of the Moretown Creamery Company, but

7

was employed purely and simply for the business of the contractor and builder, Flynn. *Spiers* v. *Elderslie S. S. Co.* (1909) S. C. 1259, 46 Scott, L. R. 893; *Luckwell* v. *Anchor S. S. Co.,* (1913) W. C. & Ins. Rep. 167, 108 L. T. N. S. 52, 12 Asp. Mar. L. Cas. 286, 6 B. W. C. C. 51; *Zugg* v. *Cunningham,* (1908) S. C. 827; *Brine* v. *May,* (1913) W. C. & Ins. Rep. 148, 6 B. W. C. C. 134; *Hockley* v. *West London Timber and Joinder Co.,* (1914) 3 K. B. 1013, 83 L. J. K. B. N. S. 1520, 1914 W. N. 330, 58 Sol. Jo. 705; *Bargey & Massaro Macaroni Co. et al.* v. *State Industrial Commission,* (N. Y.) 113 N. E. 407; *Blood* v. *Industrial Accident Commission of State of California,* 157 Pac. 1140.

No appearance for the applicant, or for the other defendants.

TAYLOR, J.   This is a proceeding under the Vermont Workman's Compensation Act, No. 164, Acts of 1915. From the facts certified by the Industrial Accident Board it appears that the Moretown Creamery Company is engaged in the creamery business in different parts of the state and employs on an average twenty men.   W. C. Flynn was a contractor and builder at the time in question and ordinarily employed less than ten men.   A short time before the injury complained of the Creamery Company by its manager entered into a verbal contract with Flynn to erect for it a new creamery building.   By the terms of the contract Flynn was to erect the building and was to be paid therefor a reasonable price by the Creamery Company.   Flynn employed most of the help, including Packett, and paid them by checks drawn to his order by the manager of the Creamery Company.   The checks were for the exact amount due each man and were indorsed over by Flynn.   While Packett was at work clapboarding the building the staging on which he was working gave way and he fell to the ground receiving the injury complained of.

The Creamery Company denied liability on the ground that Packett was in the employ of Flynn who, if anyone, it says should be held liable to make compensation for the injury.   The Board found and so certifies that Packett was not working for the Creamery Company, but was employed by Flynn; and that Flynn's contract with the company was not

a contract of hiring within the meaning of the Act. It held that Packett was entitled to compensation from the Creamery Company and made an order fixing the compensation to be paid. The petition was dismissed as to Flynn and continued as to the Travelers Insurance Company pending payment of the award by the Creamery Company. The Creamery Company brings its appeal to this Court, which presents for review the questions of law certified upon by the Industrial Accident Board. No. 164, Acts of 1915, Sec. 37.

The finding that Packett was not working for the Creamery Company but was employed by Flynn settles his status as a workman, so far as it was a question of fact. *Dale* v. *Saunders Bros.,* 218 N. Y. 59, 112 N. E. 571. The Board held that sections 9 and 58 (a) of the Act "impose upon the principals all obligations resting upon employers for compensation due to their employees." Section 9 provides: "No contract, rule, regulation, or device whatsoever shall operate to relieve the employer in whole or in part from any liability created by this act." Section 58 defines certain terms used in the Act and at subdivision (a) reads: " 'Employer,' unless otherwise stated, includes any body of persons, corporate or unincorporated, public or private, and the legal representatives of a deceased employer. It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who. by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed. If the employer is insured it includes his insurer so far as applicable."

Under the Vermont Workman's Compensation Act a necessary requisite to liability is the relation of employer and workman within the contemplation of the Act. The holding of the Board amounts to a holding that the Creamery Company was Packett's employer as the term is used in the Act. The question would not seem to be directly affected by Section 9, which merely provides against evasion of liability by an employer. It turns on the construction to be given to the definition of an employer found in Section 58 (a); but a proper interpretation of this section involves an examination of other provisions and a just appreciation of the spirit and purposes of the Act. An instructive discussion of the scope and purposes of Workman's Compensa-

tion Acts will be found in *Appeal of Hotel Bond Co.,* 89 Conn. 143, 93 Atl. 245.

The Act provides that it shall apply to all public and all industrial employment *as defined in the act,* but shall not apply to domestic servants or to employers who regularly employ not to exceed ten employees unless such employer elects to come within the provisions of the Act, Sec. 4. The term ''employment'' is defined, in the case of private employers, as including employment only in a trade or occupation which is carried on by the employer for the sake of pecuniary gain. Sec. 58 (e). The right to compensation is conferred upon workmen who receive personal injury by accident arising out of and in the course of such employment. Sec. 4. The term ''workman'' is defined as synonymous with employee and as meaning any person who has entered into the employment of, or works under contract of service or apprenticeship with, an employer. It does not include a person whose employment is purely casual or not for the purpose of the employer's trade or business. Sec. 58 (b). The Act compels an employer to secure compensation to his workmen either by workmen's compensation or guarantee insurance, or by a surety bond, unless excused therefrom by the Board on a satisfactory showing of his financial responsibility. Sec. 45. In case of default in the matter of security, the employer may be enjoined from carrying on his business while the default continues. Sec. 48. The insurance carrier as well as the employer is made liable to pay the compensation awarded. Sec. 4. It is provided that every policy of insurance and every guarantee contract covering the employer's liability shall cover the entire liability of the employer to the employees secured by the policy or contract, and shall contain a provision enabling the employees to enforce the liability of the insurance carrier in their own names, either by filing a separate claim against the carrier or by making the carrier a party to the original claim. Sec. 49. It is required that every such policy and contract shall contain a provision that the insurance carrier shall be subject to and bound by the findings and awards of the Board against the employer for the payment of compensation under the provisions of the Act, Sec. 50.

With this general view of the provisions of the Act in mind, we come to the inquiry whether the Creamery Company as the owner of the building which was being erected, while not the di-

rect employer of Packett by reason, of Flynn's being an independent contractor, was "virtually the proprietor or operator of the business there carried on;" in other words, the business in which Packett was then employed, out of and in the course of which he received his injury.

Apart from the requirement of Section 63 (a) that the rule that statutes in derogation of the common law are to be strictly construed shall have no application, the act being remedial in character should be liberally construed to effectuate the manifest purpose of the statute.

It was the evident intention of the Legislature to make the person or persons, company or corporation, that for practical purposes was the proprietor or operator of the business being carried on the employer as the term is used in the Act, though not actually the employer of the workmen by reason, among others, of there being an independent contractor who was the direct employer.

In view of other provisions of Section 58 presently to be noticed, it is clear that the clause of sub-section (a), "who is virtually the proprietor or operator of the business there carried on," was intended to qualify the words, "owner or lessee," as well as the words, "other person."

It is important to note at the outset what the business was that was "there carried on." Beyond question it was no more than the erection of a building for the ultimate use by the company as a creamery. Was the Creamery Company in the purview of the Act the proprietor or operator of this business? Sub-sections (b) and (e) of Section 58 shed light upon this question. It is only employment in the trade or occupation carried on by the employer for the sake of pecuniary gain that is within the contemplation of the Act, and it does not apply when the employment is casual or not connected with the employer's trade or business. This negative provision would be meaningless if, as to all work being done by an independent contractor, the owner should be held to be "virtually the proprietor or operator."

The true test is, did the work being done pertain to the business, trade or occupation of the Creamery Company, carried on by it for pecuniary gain? If so, the fact that it was being done through the medium of an independent contractor would not relieve the company from liability. The finding of the Board is that the Creamery Company at the time of the injury

was engaged in the creamery business.    There is nothing to show
that the company was engaged in the business of erecting build-
ings, unless such is the effect of the fact that Flynn was erecting
for it a building under a contract which made him an inde-
pendent contractor and not an employee.    But such is not the
reasonable interpretation of employment "for the purpose of the
employer's trade or business" and "in a trade or occupation
* * * * carried on    * * * * for the sake of pecuniary gain."
It would be quite as reasonable to say that Flynn was engaged in
the creamery business in contemplation of the Act as that the
Creamery Company was engaged in the business of erecting
buildings.    As well say that a farmer who lets a contract to
build a barn or corn-crib on his premises is engaged in the busi-
ness of contractor and builder, or that the business of the con-
tractor while thus engaged is that of farming.

The absurdity to which this construction leads plainly indi-
cates that the Legislature intended no such result, but only to
charge as proprietor or operator of the business being carried on
those engaged therein in the usual course of their business, trade
or occupation.    Thus, the Creamery Company might conduct its
business of manufacturing butter in such a manner as to make it
virtually the proprietor of the business, though another employed
and paid the workmen.    Flynn might have sub-let a portion of
the work under this contract in such a manner as to have been the
employer in contemplation of the Act of the workmen hired and
paid by the sub-contractor.    But the Creamery Company did
not thus become the "employer" of the workmen engaged by
Flynn in erecting the building.    Packett was employed by Flynn
both directly and in legal contemplation.    For analogous cases
supporting these conclusions see *Uphoff* v. *Ind. Bd. of Ill.*, 271
Ill. 312, 111 N. E. 128, L. R. A. 1916 E, 329; *Dale* v. *Saunders
Bros.*, 218 N. Y. 59, 112 N. E. 571; *Bargey* v. *Massaro Macaroni
Co. et al.*, 218 N. Y. 410, 113 N. E. 407; *In re Comerford et al.*,
224 Mass. 571, 113 N. E. 460; *Kennedy* v. *David Kaufman, etc.,
Co.*, (N. J. Sup.) 91 Atl. 99; *Blood* v. *Ind. Acc. Com.*, (Cal.
App.) 157 Pac. 1140; *Western Indemnity Co.* v. *Ind. Acc. Com.*,
172 Cal. 807, 158 Pac. 1033; *Donlon Bros.* v. *Ind. Acc. Com.*
(Cal.) 159 Pac. 715; *Western Ind. Co.* v. *Pillsbury*, 172 Cal. 807,
159 Pac. 721; *Luckwell* v. *Anchor S. S. Co.*, 108 L. T. N. S. 52.

The security feature of the Act makes weight for the con-
clusion we have reached.    The Act makes the liability of the in-

surance carrier coextensive with that of the employer. We may assume that the contract of insurance conforms to the requirements of the Act. It would be unjust to the Insurance Company to attempt to extend its agreement to pay the compensation awarded to the employees of the Creamery Company, for injuries sustained in its business to every undertaking of the company outside the usual course thereof. However, if the Creamery Company was Packett's employer while engaged in clapboarding the building, it would equally be the employer of men set to work by the contractor blasting for a foundation, if such work was required by the contract; and it would follow that the Insurance Company would be liable, in that view of the Act, to make compensation on an exceedingly hazardous risk and one not contemplated when the policy was sold.

We hold that the Industrial Accident Board was without authority to make the award appealed from and that it should be set aside and held for naught.

*Order vacated, award set aside and claim dismissed with costs. Let the judgment be certified to the Industrial Accident Board.*