NASSAR, ADMR., APPELLANT, *v.* INTERSTATE MOTOR
FREIGHT SYSTEM ET AL., APPELLEES.

(Decided March 7, 1938.)

*Messrs. Welles, Kelsey & Cobourn,* for appellant.
*Mr. William A. Finn,* for appellees.

OVERMYER, J. The appellant, Nicholas Nassar, a
resident of this county, as administrator of the estate
of his son, Nathan Nassar, deceased, filed an action in

Common Pleas Court for damages for the wrongful death of his son, against the appellees, the Interstate Motor Freight System, a Michigan corporation, and Joseph Cornis, then a citizen of Michigan but at the time of the trial a citizen of Toledo, Ohio, charging the death to have been due to negligence on the part of the defendants while engaged in a joint venture and while decedent was riding on a truck owned and operated by defendant Cornis in the state of Indiana. The action is brought here under the wrongful death statute of Indiana.

Issues were joined and trial had, resulting in directed verdicts at the close of the evidence, in favor of both defendants. This appeal is prosecuted to reverse the judgments entered on those verdicts. The errors assigned are the direction of the verdicts by the court and the rejection of certain evidence tendered by the plaintiff.

The case made by the pleadings presents some novel and unusual features and covers a wide territory in that the action is brought in Ohio, the defendants are residents of Michigan, the accident involved occurred in Indiana, the purported contract of employment of decedent upon which both parties stake their claims was made in Illinois, and incidental to all this, the Workmen's Compensation Law of Illinois and the "Guest Statute" of Indiana are involved as is the "full faith and credit" clause of the federal Constitution, together with questions of negligence and the doctrine of "*res ipsa loquitur.*"

However, in the course of the trial the parties receded somewhat from positions originally assumed and by admissions and stipulations narrowed the issues. The case resolves itself into whether the action for tort may be brought here in Ohio or whether the plaintiff must be remitted to his claim for compensation under the Workmen's Compensation Law of the state of Illinois where the purported contract of employment

was made, and then, if the case was properly brought here, whether a jury question was presented by the evidence.

The substantial facts are as follows: The plaintiff, Nicholas Nassar, and the defendant, Joseph Cornis, each owned trucks and trailers and were engaged as "contract haulers" by and for the defendant, Interstate Motor Freight System, a Michigan corporation engaged in the motor freight business as a common carrier and operating between various cities and towns in northern and mid-western states, especially between Toledo and Chicago. The usual arrangements existed between Interstate and its haulers, that is, Interstate solicited and secured the business, made collections, secured all necessary public service certificates, and managed and superintended the business. The "haulers" provided the trucks and trailers, gas and oil, labor and the operation of hauling the freight as directed by Interstate. The proceeds of the business were divided on a basis of 70% to the haulers and 30% to Interstate. The decedent, Nathan Nassar, and his brother, Nicholas, Jr., worked for their father and operated his truck.

On Friday night, February 9, 1934, defendant Cornis left Toledo with a load of freight, and arrived in Chicago the next morning. The decedent and his brother, with their father's truck, also left Toledo with a load and arrived at Chicago about the same time. The drivers of both trucks waited Saturday in Chicago for return loads, Cornis securing a load for return that evening, but the Nassar boys were advised by the Interstate dispatcher that there would be no load for them until Monday. Arrangements were then made between the Nassar boys and Cornis, whereby Nathan Nassar, decedent, was to return to Toledo with Cornis and get some rest so he could pick up the load his brother would bring on Monday, consigned to Cleveland. On the trip to Toledo on Saturday night the

truck of Cornis left the highway in Indiana, and Nathan Nassar, riding with Cornis, was killed.

The petition alleged that in conducting the business carried on by Interstate and Cornis, they were "jointly engaged, for their joint benefit and profit." The petition also alleged that, "at said time Nathan Nassar [decedent] was in Chicago and desired to secure transportation back to his home in Toledo and made such desire known to Cornis; that it was agreed between Nathan Nassar and the defendants that Nathan Nassar should ride with Joseph Cornis to Toledo and that in return for such transportation Nathan Nassar should perform such services for the defendants as might be necessary in any emergency which might arise during the trip."

While the separate amended answers of the defendants did not admit therein the allegations of the petition on the subject of "joint enterprise or venture" between Interstate and Cornis, and did not admit the allegations of the petition relating to the agreement or contract between the decedent and the defendants, counsel for the defendants, at the close of plaintiff's evidence and after plaintiff had rested and defendants' motion for directed verdict had been overruled, did admit both propositions in the record as evidence and so admits them in his brief filed in this court. It is then argued for the defendants that by virtue of the agreement so made, the defendants, as joint adventurers, became the "employers" of decedent, and he the "employee," and that Interstate having complied with the Workmen's Compensation Law of Illinois, the state wherein the contract or agreement in question was made, the plaintiff is not permitted to maintain this action but is remitted to his remedies under the Illinois Workmen's Compensation Act.

If the decedent was an "employee" of the defendants on the occasion in question, as that word is used in workmen's compensation acts, he became so by

virtue of the contract or agreement made at Chicago that evening, and not otherwise.

Defendant Cornis and Nick Nassar, Jr., are the only witnesses who testified on the subject of this alleged agreement. Cornis testified that Nick Nassar, Jr., asked Cornis if he was going back to Toledo that night and he answered he was. Nick said, "how about taking my young brother along with you? He wants to go home." Cornis said he told Nassar that he had no heater in his cab and the "kid would freeze to death." Later Nathan Nassar, the decedent, asked Cornis, "How about riding to Toledo with you?" Cornis said: "It is awful cold in the cab." Nathan said "I got a blanket, I am all right," and Cornis said: "Suit yourself" and they started out. Cornis denies the testimony recited below of Nick Nassar, Jr., regarding Cornis' possible need of help.

Nick Nassar, Jr., testified that when he learned that he and Nathan could not get out with a load that night he turned to Nathan and said "Why not go to Toledo with Joe [Cornis]? You can be in Toledo Monday night, get some rest, and relay the outfit up to Cleveland. That will be my chance to rest, when you come back brother Jimmy [a younger brother]—we will take it to Chicago, then you can stay and rest," and that Nathan said: "That will be all right." That he then "turned to Joe [Cornis] and said 'How about it, Joe, it might be a bad night tonight. You might need some help. You ought to take him along,' and that Joe said 'It is okay with me.' "

If counsel for defendants had elected to stand on his motion for a directed verdict, which was overruled, we would have a different question. But instead, when plaintiff had rested, defendants put in evidence the admissions hereinbefore referred to and then rested their case, and we are thus required to consider these admissions as a part of the record. *Cincinnati Gas*

& *Electric Co.* v. *Archdeacon, Admr.,* 80 Ohio St., 27, at 38 and 39, 88 N. E., 125.

Plaintiff's petition clearly pleaded a "joint adventure" between Interstate and Cornis, no doubt for the purpose of holding both defendants in court, and set up the agreement of Nathan Nassar, decedent, "with the defendants." In the brief in this court plaintiff still claims a "joint adventure" between the defendants, but contends it was not such a "contract of hire" as is contemplated by the Illinois Workmen's Compensation Act. Counsel for defendants, as above stated, admitted as the evidence on their side, the "joint adventure" and the "contract of hire," and in his brief here contends that "by virtue of this contract Nathan Nassar became an employee of both of the parties engaged in the joint adventure," and that "the act of Cornis in hiring Nassar [decedent] was the act of Interstate, and Nassar became an employee of both," these admissions and claims being made, no doubt, to bring the case under the Workmen's Compensation Act of Illinois, where Interstate had qualified and Cornis had not.

The court was required to consider the admissions dictated in open court into the record as evidence, and to consider facts admitted by the pleadings. A pertinent, disputed fact in a case, later admitted by both parties to be true, is no longer a disputed fact but an established fact in that case.

Regardless of the many issues presented and claims made, the case remains an action in tort, based on alleged negligence against two defendants. With both parties contending that the defendants were engaged in a "joint venture or enterprise" on the night of the accident, the question of joint liability for tort must follow the fortunes of the case.

Does the testimony above set out, which was all the testimony on the subject, together with the admissions referred to, constitute a "contract for hire," such as

is contemplated by the Workmen's Compensation Act of Illinois, or any other state? Under the plain language of the Supreme Court in *Coviello* v. *Industrial Commission,* 129 Ohio St., 589, 592 *et seq.,* 196 N. E., 661, the answer must be that it does not. A "contract for hire," a necessary basis for award in any workmen's compensation case, means that the employee is to receive a "price, reward or compensation" as pay from the employer for the service rendered, and it is that "price, reward or compensation" which furnishes the basis of recovery under the compensation law when injury or death occurs to the employee. Upon what possible basis of earnings could a commission under a workmen's compensation law figure out an award in the instant case? We know of none.

"It is not claimed that there is in this contract any provision for the payment of compensation to the decedent either by the day, by the hour or upon a commission basis. Indeed, there is no agreement or obligation to pay the driver anything computed upon any basis. * * *

"As well stated by the court in the case of *Western Indemnity Co.* v. *Pillsbury et al., Indus. Comm.,* 172 Cal., 807, 159 P., 721, * * * 'a *"contract of hire"* means a contract for personal services, and this is emphasized by the fact that *the basis of compensation provided by the act is the amount of wages earned. Doubtless there could be a contract of service without stipulated wages, but there could be no employee unless his personal services were rendered to the employer, and since wages are generally paid for personal services, wages or salary are made the criteria of compensations. given to injured employees.'* " *Coviello case, supra.* (Italics ours.)

Counsel for defendants says in his brief, that if the truck and two men had reached Toledo safely "the contract would have been fulfilled on the part of both parties and there would have been nothing due the de-

cedent.'' That is true, and being true upon what basis would a compensation commission have figured and based an award if Nassar had been injured and made claim; and upon what basis would the commission figure an award to the next of kin when death resulted, the Illinois act being in these respects the same as the Ohio and California acts? The whole purpose and object of workmen's compensation acts in all the states are based upon principles and considerations which bar the claims advanced that the facts here presented come within the provisions of such an act.

''We have directed attention to the fact that under the provisions of the statute the basis of compensation of injured employees is the amount of wages earned. Further, the Workmen's Compensation Fund is created from money collected from employers as premiums. * * * The undisputed facts in this case show the impossibility of determining premiums based upon a payroll when there is none, and there can be none in such a situation.'' *Coviello case, supra.*

Moreover, every workmen's compensation act enacted by a state is enacted for the benefit of the citizens of the enacting state, and the purpose clause of the Illinois Workmen's Compensation Act is:

''An act to promote the *general welfare of the people of this state* by providing compensation for accidental injuries or death suffered in the course of employment within this state, and without this state where the contract of employment is made within this state,'' etc. (Italics ours.)

Even when the injuries or death are suffered without the state of Illinois, the purpose clause still refers to ''the people of this state.''

None of the parties in the case before us were or are residents or citizens of the state of Illinois. One defendant is a Michigan corporation, the other was a resident of Michigan when the accident occurred and when the action was filed, and the decedent and all

dependents were residents of Ohio. It can scarcely be claimed under any authority or decision cited to us that "governmental interests" would in such circumstances and in the circumstances of alleged employment here shown, require the state of Ohio to remit its citizens to pursue their remedies against citizens of Michigan under the laws of Illinois, and we do not think any such "extra-territorial" effect was intended or can be read into the Illinois act. We do not think that act "undertakes to impose a rule for foreign tribunals," as the court said a similar act did not undertake to do in *Alaska Packers Assn.* v. *Industrial Accident Commission of California,* 294 U. S., 532, 79 L. Ed., 1044, 55 S. Ct., 518.

Whether the trial court directed verdicts on the ground that the action is not properly brought, and plaintiff should be remitted to his remedies under the Workmen's Compensation Act of Illinois, or whether it was done on the theory that plaintiff had made no case on the subject of negligence, we are not advised. If the latter, we are required to say that in our opinion a jury question was presented by the evidence. The truck, operated by defendant Cornis, without coming in contact with any obstacle, left the highway and plunged into a creek, and the causes for its so doing and the circumstances connected therewith preclude the finding as a matter of law that the driver was not negligent. Explanations are called for, and we do not find that the driver's explanation as a matter of law closes the case. *Weller, Exrx.,* v. *Worstall,* 129 Ohio St., 596, 196 N. E., 637; *Morrow* v. *Hume, Admx.,* 131 Ohio St., 319, 3 N. E. (2d), 39; *Scovanner* v. *Toelke,* 119 Ohio St., 256, 163 N. E., 493.

Error is assigned touching the rejection of certain letters offered by plaintiff on rebuttal. We think the rejection of the same was not error, and in view of our findings herein the letters become unimportant and irrelevant to any issues in the case.

For the reasons above discussed, the judgment of the lower court following directed verdicts for the defendants will be reversed and the cause remanded.

*Judgment reversed and cause remanded.*

CARPENTER, J., concurs.

LLOYD, J., concurring. After plaintiff had rested and the motion of defendants had been overruled, counsel for defendants read into the record the following:

"I want to admit on behalf of the defendants in this action, the Interstate Motor Freight System and Joseph Cornis, that a joint enterprise or joint adventure existed between Joseph Cornis and the Interstate Motor Freight System and the other drivers working under similar arrangements with the Interstate Motor Freight System at the time that this cause of action arose. I also want to admit now on behalf of the defendant the Interstate Motor Freight System that it was agreed between Nathan Nassar, the decedent, and the defendants, that Nathan Nassar, the decedent, should ride with the defendant Joseph Cornis and perform such services for the defendants as might be necessary."

After some further discussion by counsel and the court, counsel for defendants said:

"We rest and renew our motion for a directed verdict in favor of both defendants."

Thereupon witnesses were called and testified on behalf of plaintiff, whereupon plaintiff again rested and counsel for defendants again moved the court for a directed verdict for each of them.

As to what the "dispatcher" at Chicago of the Interstate Motor Freight System, who was present at the time of the conversation between Cornis and the Nassars, would have said if called as a witness, or what

the decedent, if alive, would have stated the conversation was, of course, the record is silent.

The above quoted statement of counsel for defendants had the effect of evidence of like import; and taken in conjunction with the facts pleaded in the petition of plaintiff and the evidence produced in support thereof, fixed as an undisputed fact the relation existing between the decedent and the defendants but not such a relation as would make applicable the Workmen's Compensation Act of Illinois.

With the facts not in dispute as to the status of the decedent in his relation to the defendants on the occasion in question, the only issues remaining to be submitted to the jury were those of the negligence of the defendants and if negligent, whether such negligence was the proximate cause of the death of the decedent, and these issues, as the record now stands, should have been submitted to the jury.

For these reasons I concur in the judgment of reversal.