[L. A. No. 328. In Bank.—July 16, 1898.]

# A. S. MOODY, Respondent, v. NEWMARK & EDWARDS, Appellants, and J. S. ROBINSON, Defendant.

ACTION UPON ACCEPTED ORDER—INSUFFICIENT COMPLAINT—EQUITY NOT SHOWN.—In an action upon an accepted order "to be paid as equity is collected," from certain wheat in a warehouse, described as sold to a person named, and by the terms of which one-third of the amount collected, after the amount borrowed on the wheat had been paid, was to be paid upon the order until the amount specified therein should be fully paid, a complaint which does not state facts showing the existence of an "equity," or the amount borrowed, or that the wheat had been pledged as security for any sum, or what the maker of the order had to do with the wheat after it had been sold, or that he had a lien upon it, and does not directly allege that the price of the wheat was to be collected by the persons accepting the order, is insufficient upon both special and general demurrer.

ID.—INCONSISTENT FINDINGS—SUPPORT OF JUDGMENT.—Where it affirmatively appears from the complaint and a portion of the findings that the entire fund which could have existed, applicable to the debt represented by the order, had been paid by the defendants thereupon, but it is elsewhere found that the full purchase price which the defendant should have received would have yielded a much greater sum to the plaintiff than the amount paid, such finding being irreconcilable with the allegations of the complaint and with the other findings, the findings being inconsistent upon an essential fact, cannot support the judgment.

ID.—SALE OF WHEAT—CHATTEL MORTGAGE—DEPRECIATION IN VALUE—LOSS OF VENDORS.—Where the accepted order sued upon was drawn by one of a firm of vendors, who had sold the stored wheat, for his proportion of the surplus price which might be collected by chattel mortgagees of the vendee, above the mortgage debt, interest, charges and costs, and the chattel mortgage provided that if the wheat deteriorated in quality or depreciated in price the vendee would correspondingly reduce the debt or increase the security, and upon failure to do so, the chattel mortgagees might immediately sell the wheat without notice, upon such deterioration and depreciation in fact occurring, the chattel mortgagees might, with the consent of the partner holding the accepted order, take a portion of the wheat in payment of the depreciated value, or it appearing that the wheat was worth no more than the amount of the loan, might, with the consent of such partner, surrender the wheat to the purchaser upon receiving payment or other security; and any resulting loss must fall upon the partnership, and not upon the mortgagees.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. J. W. McKinley, Judge.

The facts are stated in the opinion of the court.

J. T. Houx, for Appellants.

E. Edgar Galbreth, for Respondent.

TEMPLE, J.—This action was brought to recover from Newmark & Edwards, as partners, money alleged to be due upon a certain order drawn upon the firm by one J. S. Robinson. It is alleged that on the twenty-fourth day of September, 1894, J. S. Robinson was indebted to plaintiff in the sum of five hundred and forty-three dollars and nine cents, and on that day drew and delivered to plaintiff his written order or draft, reading as follows:

"Los Angeles, Cal., Sept. 24, 1894.
"To Newmark & Edwards, Los Angeles:

"Gents.—Please pay to A. S. Moody, or order, the sum of five hundred and forty-three & 09-100 dollars—to be paid as equity is collected from wheat now in Puente warehouse sold last May 19th to J. V. Suman, Colton, viz., after the amount borrowed on wheat has been paid, the amount collected over & above such loan, you to pay Mr. A. S. Moody (1-3) one-third of all such amounts until said amount of five hundred and forty-three 09-100 dollars is fully paid. Amount of wheat on hand this day 6,348 sax, 831,325 lbs. J. S. ROBINSON."

The order was on the same day accepted by Newmark & Edwards.

Before suit was brought there had been paid on the order one hundred and eighty-three dollars and twenty-five cents. At that time there was stored in a certain warehouse a quantity of wheat which had been sold by Robinson to one Suman for eight thousand five hundred and twenty-one dollars and eight cents, and Newmark & Edwards were authorized and empowered by said Robinson, and undertook to collect from Suman the price of said wheat.

It is charged that subsequent to the acceptance of the order Newmark & Edwards permitted Suman to remove all of the wheat, and "received or should have received payment in full of the said purchase price for the same, at or before said removal of said wheat, which said purchase price amounted to more

than two thousand dollars, as equity, as mentioned in said order or draft, after the amount borrowed on said wheat had been fully paid." "And it was understood between plaintiff and defendants that the defendants were not to authorize, suffer, nor permit said Suman to remove said wheat, or any part or portion thereof, unless the purchase price was paid by said Suman at or before the time of such removal."

The "equity" which was to be collected is not explained, except in the recital above quoted, as "equity" after the amount borrowed had been repaid. There is no allegation that any amount had been borrowed, or that the wheat had been pledged as security for any sum whatever. Of course it is absurd to speak of collecting an equity, and in legal phraseology no meaning appropriate to anything involved in this case can be given to the term. No equity is averred, and there probably was none to aver. But doubtless the parties had reference to some surplus which might remain after some charge upon the wheat had been satisfied. But there is not shown that there was any such charge, much less is it shown that there was or would be a possible surplus after the charge hinted at had been paid.

Nor does it appear what Robinson or plaintiff had to do with the wheat after it had been sold and delivered to Suman. It is not shown that anything remained due Robinson on account of the wheat, and certainly not that Robinson retained a lien upon it or any right to demand payment to him of any money as a condition of its being delivered to Suman by the pledgee. Suman was plainly entitled to have all the wheat delivered to him as soon as he paid the charge upon it, and an agreement on the part of Newmark & Edwards with either Robinson or plaintiff not to do so was void as against public policy. It was an agreement not to perform their obligation to Suman.

Newmark & Edwards undertook to pay the order out of a special fund. It is not otherwise shown, than by a conclusion of law which is based upon no facts stated, that such a fund ever existed. If the allegation can be regarded as of a fact, it must be held to mean that Newmark & Edwards delivered the wheat to Suman without collecting the price. That there was a price to be collected, as I have already stated, is not

averred, but may be implied from this allegation now under consideration. Such a mode of pleading cannot stand before a special demurrer, and such a demurrer was interposed in this case. But had all these allegations been found in the complaint, still it does not appear that Newmark & Edwards are answerable for the fact that no such fund was created. Under the allegations they were bound to deliver the wheat when the charge upon it was paid, and it does not appear that Robinson or plaintiff had any claim upon it. They cannot be held responsible for not doing what they were under no legal obligation to do.

The demurrer should have been sustained.

In the complaint it is averred that the price of the wheat amounted to eight thousand five hundred and twenty-one dollars and eight cents. That is, in effect, also the statement in the order sued upon. Such is also the finding; and it is also found that the wheat was pledged to Newmark & Edwards to secure the sum of eight thousand dollars loaned by them to Suman, together with interest, charges and costs. The interest, charges and costs cannot be made out from the record, but if there were none there could have been only five hundred and twenty-one dollars and eight cents collected as "equity" had the whole price been collected. By the terms of the order Newmark & Edwards were required to pay one-third of this to plaintiff.

It affirmatively appears, therefore, from the complaint, that the entire fund which could have existed, applicable to his debt, has been paid to him, and it is also found that defendants have paid to plaintiff one-third of the money received in excess of their loan to Suman.

In another finding it is found that said defendants delivered the wheat to Suman and should have received the full price, "and which purchase price amounted to nineteen hundred dollars more than two thousand dollars as equity mentioned in said order or draft." Supposing this to mean that the price, if received, would have amounted to nineteen hundred dollars more than the debt to defendants, it is still utterly irreconcilable with the allegations of the complaint and with the other findings. No one can discover from the record how such a find-

ing can be true. The amount of the wheat and its price are twice stated in the complaint. These correspond with each other and with the other findings upon the subject. There is no controversy whatever as to the amount of the debt.

But where two findings upon an essential fact are so opposed to each other the findings cannot support the judgment.

But suppose we overlook the manifold defects in the complaint and assume that the finding is that there would have been a surplus of nineteen hundred dollars if the full price had been collected; and, further, as is neither alleged nor found, that the wheat was held also to secure a balance of the price due Robinson—still plaintiff cannot recover.

A brief summary of the facts found may be thus stated: The wheat in question was raised by defendant Robinson and another, as partners. May 19, 1894, Robinson, with the knowledge and consent of the other joint owners, sold and delivered the wheat to Suman at the price of one dollar two cents and five mills per cental. Suman then borrowed upon the wheat, which was in a warehouse, eight thousand dollars, payable, with interest, costs and charges, within ninety days. The terms of the chattel mortgage provided that if the wheat deteriorated in quality or depreciated in price Suman would correspondingly reduce the debt or increase the security, and in case Suman failed to do so the note should become immediately due, and Newmark & Edwards were authorized to sell or buy or dispose of the wheat without previous notice to Suman.

It is found that the wheat did depreciate in value and in quality, and then with the knowledge and consent of Robinson, from whom Suman had purchased, an arrangement was made by which defendant took a portion of the wheat in payment. It is distinctly found that at the time the wheat was not worth more than sufficient to pay the loan made by defendants, and has not been of any greater value since. Since the wheat had ceased to furnish security, defendants had a right to sell it for their debt, and with the consent of Robinson, which they had, could surrender the wheat to Suman upon receiving payment or other security.

It further appears from the findings that the turning over of the wheat to defendants, and the loan made on it, was a part-

nership affair, and the order sued upon was given merely to show that plaintiff should receive one-third of any amount which would be coming to the partnership. Naturally the partnership should lose, and not these defendants, if Suman became insolvent and the wheat deteriorated to such an extent that it would not pay. It was through an arrangement with the partnership, and not primarily with appellants, that Suman was permitted to hold the wheat until required in his mill. They received the eight thousand dollars loaned, and it is found that it was worth no more. Neither the law nor equity required that the defendants should make up to them their losses.

The judgment and order are reversed.

McFarland, J., Van Fleet, J., Garoutte, J., and Harrison, J., concurred.