CLARKE, P. J., LAUGHLIN, MERRELL and PHILBIN, JJ., concur.

Judgment affirmed.

----

THE HOCKING VALLEY RAILWAY COMPANY, Appellant, *v.* JULIA ADELAIDE BARBOUR and Others, as Executors, etc., of WILLIAM BARBOUR, Deceased, Respondents.

First Department, January 16, 1920.

Contract — admissibility of parol evidence to show true consideration — agreement to give and execution of bond for purpose of inducing vendor to violate contract is illegal and against public policy.

The true consideration stated in a written obligation may always be shown by parol for any purpose other than changing the obligation imposed by the instrument upon the other party thereto.

A contract to give a bond for the purpose of inducing a vendor to sell goods in violation of his contract known to have been made to sell them to another person is illegal and against public policy and such a bond given with full knowledge of all the parties of said purpose constitutes not only a fraud but also a civil wrong against the person to whom the vendor had agreed to sell, and, therefore, will not be enforced.

APPEAL by the plaintiff, The Hocking Valley Railway Company, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 13th day of August, 1919, granting defendants' motion for judgment on the pleadings consisting of the complaint and answer.

*G. H. Dorr* of counsel [*Allan H. Smith* and *James H. Purdy, Jr.,* with him on the brief; *Rearick, Dorr & Travis,* attorneys], for the appellant.

*John H. Corwin* of counsel [*Harris, Corwin, Moffat & Scheck,* attorneys], for the respondents.

First Department, January, 1920.     [Vol. 190.

SMITH, J.:

The complaint alleges the sale by the plaintiff to the Central Locomotive and Car Works of certain gondola cars. It alleges that prior to that sale the plaintiff had entered into a contract with one Wardwell for the sale of 300 of said gondola cars. The two sales would leave about 50 cars belonging to the plaintiff unsold. It then alleges that after this contract with Wardwell and after the original contract with the plaintiff, the Central Locomotive and Car Works entered into an agreement for the purchase of all of the cars of the plaintiff, including the cars which had been theretofore sold under contract to Wardwell. The plaintiff apparently was unwilling to hazard a liability to Wardwell and refused to agree to give all of these cars to the Central Locomotive and Car Works, except upon a bond that should be executed by the Central Locomotive and Car Works and signed by the defendants' testator, William Barbour, to save them harmless from all damages and costs which they might suffer if they should enter into this contract. That bond was given and the contract between the plaintiff and Wardwell was broken and all the cars delivered to the Central Locomotive and Car Works. An action was brought by Wardwell against the plaintiff and judgment was obtained for the breach of contract, and the plaintiff now sues the executors of this bondsman upon his contract to save them harmless from all damages arising by reason of the failure to deliver these cars to Wardwell.

In the indemnity bond upon which this action is brought, it is recited that the plaintiff, through its president, sold to the Central Locomotive and Car Works all of a certain series of cars, including these cars in question, and "Whereas, through mistake, three hundred of said cars were subsequently sold to H. F. Wardwell," the obligation is assumed to " well and truly save harmless the Hocking Valley Railway Company, from all loss, costs, suits and damages that may be occasioned to the said The Hocking Valley Railway Company by or in any way growing out of the failure on the part of The Hocking Valley Railway Company to deliver the three hundred (300) cars claimed by said H. F. Wardwell to be sold by it to him * * *." The complaint then proceeds to state that the cars had not been all sold to the Central Locomotive and Car

Works, but that 300 cars had been contracted to be sold to Wardwell prior to any sale whatever to the Central Locomotive and Car Works, and that the recitals in said bond were misstatements of fact and that the real facts were fully known both to the Central Locomotive and Car Works and to William Barbour, the surety upon said bond. The answer denied the allegations of the complaint as thus set forth, except the signing of the bond and also alleges that if such contract had been made it was an illegal contract which is not enforcible in the courts of the State. The order appealed from was made upon the defendants' motion upon the pleadings, and the judge at Special Term dismissed the complaint upon the ground that the parties to the bond could not contradict its terms; that upon the face of the bond it appeared that the plaintiff, in further contracting to turn over all its cars to the Central Locomotive and Car Works, was only performing what it was in duty bound to do under the first contract, and that there was, therefore, no consideration for the giving of the bond. It has generally been held that the true consideration stated in a written obligation may always be shown by parol for any purpose other than that of changing the obligations imposed by the instrument upon the other party to the contract. (*Sturmdorf* v. *Saunders*, 117 App. Div. 762; *Wheeler* v. *Billings*, 38 N. Y. 263; *Arnot* v. *Erie R. Co.*, 67 id. 315; *Miller* v. *McKenzie*, 95 id. 575; *Mills* v. *Dow*, 133 U. S. 423.)

Under this rule they might show what the actual purpose of the bond was and the consideration for which it was given. The actual consideration here as alleged in the complaint is the delivery of these cars, which had, in fact, been contracted for by Wardwell, to the Central Locomotive and Car Works, which would involve an inducement to this plaintiff to break this contract, admittedly made with Wardwell. This, to my mind, is an illegal consideration and an illegal purpose, which the courts will not enforce.

In *Randall* v. *Howard* (2 Black [U. S.], 585) the head note reads as follows: " The owner of mortgaged land made ' a friendly arrangement ' with the mortgagee to buy it in, ostensibly for his own use, but with the understanding that he was to hold it for the use of the mortgagor, as if no sale had been made. This was done to defeat the claim of a third

party; and with that view the mortgagor confirmed the sale. The mortgagee and purchaser afterwards claimed the land as his own. *Held*, that the mortgagor cannot sustain a bill in equity to restrain the mortgagee from selling the land, and to enforce the understanding made before the sale." Further, " Neither party can enforce against the other a contract made between themselves to injure a third person, in fraud of the law."

In 9 Cyc. 468, the law is stated: "An agreement is illegal and void where its object is the commission of a civil wrong against a third person, although the wrong may not be an indictable offense or crime either at common law or under the statutes."

Upon the page thus cited from Cyc. it is further stated: "As just stated an agreement to perpetrate a fraud upon a third person is illegal and void." Among the agreements thus cited is a secret agreement between partners tending to defraud third persons.

While these parties were not partners, and there was no joint enterprise, nevertheless it is just as fraudulent and illegal for the Central Locomotive and Car Works to enter into an agreement with the plaintiff, whereby the contract between the plaintiff and Wardwell should be deliberately broken, and the consummation of the agreement constituted not only a fraud upon Wardwell, but constituted a civil wrong against Wardwell. If the court should enforce this contract it would be thereby making itself a party to the consummation of the wrong. It matters not in what position the parties may find themselves, where they are in *pari delicto*, a court will aid neither party to enforce any right to claim under such an agreement. Whatever right of action Wardwell may have had against the plaintiff, he had a primary right to have his contract consummated, and as this indemnity bond was given with full knowledge of all the parties of the fact that its purpose was to procure the plaintiff to deliberately violate his contract with Wardwell, the court will not give its aid. The law cares nothing for what a fraudulent party may lose, but will leave the parties where it finds them, and will leave them to disentangle themselves from the meshes in which they have become involved by their fraudulent agreement.

That such an agreement is illegal and against public policy is enunciated in the case of *Moody* v. *Newmark & Edwards* (121 Cal. 446). In that case one Robinson had given an order to Newmark & Edwards, the two other defendants, to pay A. S. Moody, or order, the sum of $543.09 to be paid as equity is collected from wheat in the Puento warehouse, sold the preceding May nineteenth, to J. V. Suman, Colton, viz., after the amount borrowed on wheat has been paid, the amount collected over and above such loan, Newmark & Edwards to pay A. S. Moody one-third of all such amounts until said amount of $543.09 is fully paid. Amount on hand 6,348 sax, 831,325 pounds. This was signed by J. S. Robinson. The order was upon the same day accepted by Newmark & Edwards. Before suit was brought Suman had paid to Robinson $183.25. At that time there was stored in a certain warehouse a quantity of wheat which had been sold by Robinson to one Suman for $6,521.08, and Newmark & Edwards were authorized and empowered by said Robinson and undertook to collect from Suman the price of said wheat. It is charged that subsequent to the acceptance of the order Newmark & Edwards permitted Suman to remove all of the wheat. It was understood between the plaintiff Moody and the defendants that the defendants were not to authorize, suffer nor permit said Suman to remove said wheat, or any portion thereof, unless the purchase price was paid by said Suman at or before the time of such removal. The charge apparently is against Newmark & Edwards that they delivered to Suman the wheat without payment in full of the price thereof. The court in the opinion says: " Nor does it appear what Robinson or plaintiff had to do with the wheat after it had been sold and delivered to Suman. It is not shown that anything remained due Robinson on account of the wheat, and certainly not that Robinson retained a lien upon it or any right to demand payment to him of any money as a condition of its being delivered to Suman by the pledgee. *Suman was plainly entitled to have all the wheat delivered to him as soon as he paid the charge upon it, and an agreement on the part of Newmark & Edwards with either Robinson or plaintiff not to do so was void as against public policy. It was an agreement not to perform their obligation to Suman.*"

It is not necessary here to hold that one purchasing goods

known to have been contracted to another makes a contract tainted with illegality. Where, however, the contract as in the case at bar is to give a bond for the very purpose of inducing the vendor to violate his contract known to have been made, a different question is involved, and the contract comes within the condemnation of the law as one made directly for an illegal purpose and, therefore, tainted with illegality. (*Armstrong* v. *Toler*, 11 Wheat. 258; *Rhoades* v. *Malta Vita Pure Food Co.*, 149 Mich. 235; *Posner Co.* v. *Jackson*, 223 N. Y. 325.)

The order should be affirmed, with ten dollars costs and disbursements, with leave to plaintiff to serve an amended complaint upon payment of said costs and ten dollars costs awarded to defendants by the order appealed from.

CLARKE, P. J., LAUGHLIN, MERRELL and PHILBIN, JJ., concur.

Order affirmed, with ten dollars costs and disbursements, with leave to plaintiff to serve an amended complaint on payment of said costs and ten dollars costs of motion at Special Term