[Civ. No. 1544.   Fourth Appellate District.—January 28, 1935.]

C. E. LILLIBRIDGE et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, HATTIE SUTTER et al., Respondents.

Head, Wellington & Jacobs for Petitioners.

Everett A. Corten and Arthur I. Townsend for Respondents.

BARNARD, P. J.—The petitioners seek to annul an award made by the respondent commission in favor of the other respondents based upon the death of one Paul Sutter.

The petitioners were operating a farm and Paul Sutter, whose general occupation was that of a well driller, agreed to drill for them a well which was to be used for irrigation purposes. It appears without dispute that the petitioners sought to obtain the use of a well drilling outfit which was owned by a casing company; that this owner informed them that he would loan the outfit only if the same were placed in charge of a competent driller; that the petitioners stated they expected to have the well drilled by Sutter which was satisfactory to the owner of the outfit; that they then interviewed Sutter and he agreed to drill the well; that under this agreement Sutter was to drill the well and the petitioners were to furnish all casing and other materials and also were to furnish any additional help Sutter might require; that Sutter was then working three days a week for the "C. W. A." and it was agreed that he might continue this work and that he would drill the well at times when he was not otherwise employed; that he was to receive a cow, either in part or in full payment, for his services; that Sutter assisted in bringing the drilling outfit to the petitioners' premises; that some two weeks later, assisted by some of the petitioners, Sutter was placing the outfit in position to drill the well at a spot which he had himself selected; that while the outfit was being placed in position one of the petitioners asked Sutter if the position chosen was not too close to some electric wires which were overhead; that Sutter replied to the effect that there was plenty of clearance; and that while Sutter was raising the rig into posi-

tion he was electrocuted through a portion of the rig coming into contact with the electric wires.

There is a conflict in the evidence as to how the work in question was to have been paid for. Two of the petitioners testified to a conversation between them and the deceased in which Sutter stated he would do the work for a cow, and that he was then told there would be "no wages in it". On the other hand Sutter's widow testified as follows with reference to what her husband said immediately after the conversation referred to: "He came in, and he was still working for the C. W. A. at the time, and he said Mr. Lillibridge wanted him to drill a well, and I asked him what he was getting, and he said he was getting a cow, . . . and I asked him how long it would take him to drill the well, and he said about three or four weeks, and I said, 'Your cow will come pretty expensive, wouldn't it?' and he said 'Well, I took the cow and what there is over, I will have money at driller's wages, six dollars a day.' "

The commission found that Sutter met his death while acting as an employee of these petitioners; that the injury which caused his death arose out of and occurred in the course of his employment; and that he was not an independent contractor. A petition for a rehearing was denied and this proceeding followed.

█ The main question presented is whether the evidence is sufficient to sustain the findings that the deceased was an employee and not an independent contractor. The general rules applicable to such a question are thoroughly settled. In *May* v. *Farrell,* 94 Cal. App. 703 [271 Pac. 789], the court said: "An independent contractor is one who in rendering service exercises an independent employment or occupation, and represents his employer only as to the results of his work and not as to the means whereby it is to be accomplished (*Green* v. *Soule,* 145 Cal. 96 [78 Pac. 337]; *Moody* v. *Industrial Acc. Com.,* 204 Cal. 668 [60 A. L. R. 299, 269 Pac. 542]); and when the essential object of the employment is the performance of the work the relation of master and servant does not exist unless the employer retains the right to direct the mode and manner in which the work shall be done. (*Western Indemnity Co.* v. *Pillsbury,* 172 Cal. 807 [159 Pac. 721].) As was held in *Western Mutual Supply Co.* v. *Pillsbury,* 172 Cal. 407 [Ann. Cas.

1917E, 390, 156 Pac. 491], the real test is to ascertain whether the employee was subject to the employer's orders and control and was liable to be discharged for disobedience or misconduct; and the fact that a certain amount of freedom of action is inherent in the nature of the work does not change the character of the employment where the employer has general supervision and control over it.'' In *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570], it is said: ''One of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent. (*Tuttle* v. *Embury-Martin Lumber Co.*, 192 Mich. 385, 399 [Ann. Cas. 1918C, 664, 158 N. W. 875].) It is not a question of interference, or noninterference, not a question of whether there have been suggestions, or even orders, as to the conduct of the work; but a question of the right to act, as distinguished from the act itself or the failure to act. (*Carleton* v. *Foundry & Machine Prod. Co.*, 199 Mich. 148, 152 [19 A. L. R. 1141, 165 N. W. 816].) . . . Coincident with the right of control is the right of either the employer or the employee to terminate the relation without liability. This is but another way of stating the rule, for the right to immediately discharge involves the right to control.''

The respondents argue that the petitioners have not met the burden of proof which rests upon them. And while it is admitted that the petitioners had exercised no control over Sutter up to the time of the accident, it is claimed that there is no direct proof of the fact that they did not have the right to control the method in which he should do the work. It does appear, however, that the petitioners were unable to obtain the use of the well drilling outfit unless the same were placed in the charge of a competent well driller; that the owners were satisfied with Sutter's competency; and that the outfit was obtained on the understanding that he should have charge of its operation.

The only inference reasonably to be drawn from these facts is that the petitioners were not to have the right to control the use of the machine or, in other words, the method in which Sutter should do the work. There could be no

object in insisting that a machine be placed in charge of a competent well driller if an inexperienced man was to retain control over the manner in which it should be operated. There was also testimony that when the agreement was made the petitioners told Sutter that ''he would have to take charge before we could get the rig'', and that ''he was to have full charge'' of the work of drilling the well. This evidence is borne out by the fact that Sutter chose the location for the well and disregarded the suggestion made by one of the petitioners with respect to moving the outfit away from the wires, and by the general nature of the work to be done which called for an expert in that line, one in which an ordinary farmer would hardly be expected to be able to direct the operations. We think it sufficiently appears that Sutter was in full control of the method of doing this work and that no right of control, within the meaning of the rule, rested in the petitioners.

In support of their contention that Sutter was merely an employee, the respondents rely mainly upon the testimony of his widow to the effect that he told her that he was to have regular wages for anything over the value of the cow. Aside from the unsatisfactory nature of this evidence it is not conclusive in any event. While the manner of paying for work is a circumstance to be taken into consideration in determining the nature of the relationship between the parties, it is not necessarily controlling. An independent contractor may be paid on a per diem basis. (*Flickenger* v. *Industrial Acc. Com.*, 181 Cal. 425 [184 Pac. 851, 19 A. L. R. 1150].)

The admitted fact that Sutter was to receive a cow, at least in part payment, is important as bearing upon another test which is frequently applied in such cases, namely, whether either of the parties had the right to terminate the relationship at any time. While there is a dispute here as to whether this cow was to be taken in full payment for the work, there is no question that it was to be taken as part payment, at least, and no question that Sutter agreed to drill the well. The deceased followed an independent employment or occupation and he was here engaged to do a certain job in that line, and not merely to work until he was told to stop or until he decided to quit. A contract was made for a specific result which differs materially from

any contract of employment which leaves the parties free to terminate the same at any time. If he did not complete the well he would not be entitled to the cow, or to anything in lieu thereof, and on the other hand the petitioners could not discharge him at any time without incurring a liability therefor.

Regardless of whether the deceased was to have received anything in addition to the cow for the work he was to do, we think this is peculiarly a case where the petitioners were interested in the result and not in the method of performing the work and that the only conclusion possible from the evidence is that Sutter was an independent contractor and not an employee.

For the reasons given the award is annulled.

Marks, J., and Jennings, J., concurred.

A petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 28, 1935.