[Civ. No. 11136. Second Appellate District, Division One.—January 6, 1937.]

U. S. HAMMEL, Respondent, v. MARVIN KEEHN et al., Defendants; HAROLD KAISER et al., Appellants.

Lasher B. Gallagher for Appellants.

G. Harold Janeway, F. J. Finucane and Frank M. Gunter for Respondent.

BISHOP, J., *pro tem.*—In this action for damages caused by the negligent driving of an automobile by defendant Keehn, the evidence, even including that newly discovered for the purposes of a motion for a new trial, was insufficient to reveal the defendants Kaiser Brothers as the employers of Keehn, and hence liable for his carelessness. The trial court was not in error, therefore, in entering a judgment of nonsuit in favor of Kaiser Brothers. As no other error appears to warrant the order granting a new trial as to them, that order is without support and, on this appeal from it, must be reversed.

 The owner of the automobile which, according to the complaint, "knocked plaintiff in the air and to the ground", had purchased it from Kaiser Brothers, the appellants. As a part either of the original transaction or of subsequent dealings, the owner and Kaiser Brothers had an understanding that the latter would service the automobile whenever it was needed. To this end the arrangement was made and the practice had become established that upon receipt of a telephone call, Kaiser Brothers would send someone for the car, service it, and then return it to the owner. Keehn was returning the car to its owner at the time of the accident which gave rise to this action.

Had this arrangement between Kaiser Brothers and the owner of the car which Keehn drove been the only one of its kind, the facts from which must be answered the question: was Keehn the servant of Kaiser Brothers, the master? would be very meager. The inference that one found performing service for another is his servant (*Dibble* v. *San Joaquin L. & P. Corp.*, (1920) 47 Cal. App. 112 [190 Pac. 198], might remain persuasive. That inference may be so destroyed by other evidence, however, that a nonsuit is warranted. (*Crouch* v. *Gilmore Oil Co.*, (1936) 5 Cal. (2d) 330 [54 Pac. (2d) 709].) We find that to be the situation here.

To begin with, Kaiser Brothers had this same call-and-delivery arrangement with many of their customers. They might have relied upon their own resources to accomplish their object, but instead they depended largely, if not exclusively, upon a copartnership originally composed of defendants Riggs and one or more others. There may be some argument whether Keehn was an employee or whether he was a member of the partnership; it does not matter, for he was one or the other. This copartnership rendered the same service for another automotive agency. The partnership stood ready, when requested by either agency, to furnish a man to go to the owner of the car to be serviced, bring the car to the agency, and again upon request return it to the owner. As equipment, the partnership had motorcycles to enable their men to get to and from the home port of the automobiles to be serviced, so rigged up that when the automobiles were being driven, the motorcycles could be towed behind. The partners themselves were the agents of the partnership, taking the calls in turn as a matter of their own practice. They charged a flat rate by zones for the service thus rendered, presenting bills twice a month to each agency, then dividing the proceeds among the partners. So far as appears, there was no agreement which bound them to respond to a call nor which required either service agency to call them rather than obtain or return an automobile by some other medium. Each call was thus a new contract, although its terms were to be found not in freshly uttered words, but in the recognized practice which repeated contracts had established.

It appears without doubt, therefore, that when on the occasion of interest to us, Kaiser Brothers turned an automobile over to Keehn to have it returned to its owner, he was acting not as their servant, for whose negligence they must stand responsible, but as the agent of an independent contractor, for the consequences of whose negligence Kaiser Brothers have no liability. The relationship was that illustrated by *Freiden* v. *Industrial Acc. Com.*, (1922) 190 Cal. 48 [210 Pac. 420], where a longshoreman had established the business of unloading automobiles from ships at the request of the consignees. He furnished the equipment and chose his associates, with whom he divided the $1.50 per car which he charged. One of his assistants, injured in the

unloading of a car, was held not to be the employee of the one for whom the unloading was taking place, because it appeared that the longshoreman was plainly an independent contractor. To like effect we find *Whiting-Mead Commercial Co.* v. *Industrial Acc. Com.*, (1924) 67 Cal. App. 618 [228 Pac. 352]. In this case the petitioner had agreed with the purchaser of some building material to deliver it. The applicant, injured in the process of delivery, claimed to be in petitioner's employ. He was held to be an independent contractor in a situation presenting many parallels to our case. First of all we note that what the applicant was doing was by way of discharging a legal obligation of the one claimed to be his employer. Obviously, one may make use of an independent contractor, as well as a servant, to discharge his duty to third parties. There was, furthermore, no contract continuing from day to day, but only a practice under which new contracts constantly arose. There, as in our case, the contractor furnished his own equipment, maintained at his own expense. There it was stressed, as it appears here, if it is of any significance where there is no continuing relationship, the one claimed to be master had no control over the hours of labor, the comings or goings of the "servants", and he had no right to "hire or fire" them. There, as here, the result was contracted for; the means to accomplish the result were in the hands of the independent contractor.

The latter statement is no less true because, in order to accomplish the result, directions had to be given, as specifications are furnished for a subcontractor's guidance. Nor is it changed by the fact that Kaiser Brothers entrusted two commissions to Riggs and his partners: first the discharge of the duty Kaiser Brothers had to the owners of the automobiles; second, the duty they owed themselves, that is, to get a reward for their services. When, as is suggested by the newly discovered evidence, a condition was presented whereby the partnership could not carry out the contract according to its terms, because the owner would not pay on delivery, the request of the contractor for further specifications is not proof that there was no independent contractor but instead a servant under the direction of his master.

Because the evidence does not permit of the conclusion that Keehn was the employee of Kaiser Brothers, the nonsuit in their favor was properly granted.

The order granting a new trial is reversed.

Houser, P. J., and Doran, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 29, 1937, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 25, 1937.