[Civ. No. 11284. Second Appellate District, Division Two.—April 14, 1937.]

MILDRED WASHKO, as Administratrix, etc., et al., Appellants, v. JOEL STEWART, et al., Defendants; HOWARD AUTOMOBILE COMPANY (a Corporation), Respondent.

Alford P. Olmstead and Wendell P. Hubbard for Appellants.

Gibson, Dunn & Crutcher, Philip C. Sterry and Robert F. Schwarz for Respondent.

CRAIL, J.—This is an action for damages for personal injuries resulting from an automobile collision. The automobile had been sent by the owner to the defendant Howard Automobile Company for servicing. At the time of the collision the car had been serviced and was being driven back to the owner by the defendant Stewart. The trial court rendered judgment against the driver of the car and against the owner of the car, but denied judgment against the Howard Company under a finding that the driver of the car was not at the time of the accident acting as an employee of the Howard Company but was an independent contractor. The appeal is from the judgment in favor of Howard Company. We are asked to reverse the judgment upon the ground that there is insufficient evidence to sustain said finding.

While the question of the sufficiency of the evidence to support a finding may be presented for review, the duty of the appellate court stops when it has determined that there is some substantial evidence to support it. Ordinarily on appeal the court does not and should not pass upon the weight or preponderance of evidence, and it will uphold the finding of the trial court if there is some substantial evidence to support it, even though it would have decided otherwise if it had been the trier of the facts. (2 Cal. Jur. 912, 913.) No rule of appellate procedure is more firmly settled than this. In such cases the court is concerned only with the single inquiry,

Does the record contain any substantial evidence tending to support the finding assailed? and if there is such evidence, which is not inherently improbable, the answer must always be that the trial court has conclusively decided the question. The same rule applies though there be no conflict in the evidence if the inferences fairly deducible therefrom are such that different conclusions might rationally be drawn therefrom by equally sensible and impartial men. The court will not upset a finding because in its judgment the inference drawn by the trial court is improbable or more likely to be untrue than true. In such case the court's duty begins and ends with the inquiry whether the trial court had before it evidence upon which an unprejudiced mind might reasonably have reached the same conclusion which was reached. The same rule applies also where the parties stipulate to the probative facts or where probative facts are set forth in the findings and different inferences may reasonably be drawn therefrom. (2 Cal. Jur. 934 to 936.)

The question whether or not the relation of employer and employee existed at the time of the accident, under the oral contract in this case, was a question of mixed law and fact to be proved like any other question of fact. (*Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577 [250 Pac. 570].) In the case of *La Franchi* v. *Industrial Acc. Com.*, 213 Cal. 675 [3 Pac. (2d) 305], our Supreme Court said: "In *Hillen* v. *Industrial Acc. Com.*, 199 Cal. 577, 580 [250 Pac. 570] this court held that whether or not the relation of employer and employee exists is a question of mixed law and fact, a finding to that effect being binding on this court; and that only where there is entire absence of evidence to support the commission's findings and award should it be set aside." (See, also, *Pacific Gas & Elec. Co.* v. *Industrial Acc. Com.*, 180 Cal. 497, 499 [181 Pac. 788].)

It must be kept in mind therefore, that the real question before us for decision is not, Did the relation of employer and employee exist between the driver and the Howard Company at the time of the accident? but, Was there any substantial evidence before the trial court to sustain the finding that such relationship did not exist? We set this forth so particularly for the reason that the real question is not stated in the plaintiffs'. briefs, and is not discussed therein. Plaintiffs content themselves with marshaling the facts and circumstances in

evidence against said finding as though this court were a jury. Plaintiffs conclude their briefs with a recitation of nine circumstances which tend to prove that the relation of master and servant existed between the driver and the said defendant. We must keep the true question in mind.

The law determining when the relation of employer and employee exists is clear and precise. Section 2009 of the Civil Code states it as follows: "A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master." "The word 'servant' is generally synonymous with the word 'employee'." (*Western Indemnity Co.* v. *Pillsbury*, 172 Cal. 807 [159 Pac. 721].) In that case the court said: "It is true that many authorities specify 'control' of the person performing work as the means of differentiating service from independent employment. The test of 'control', however, means *complete* control'." In *Moody* v. *Industrial Acc. Com.*, 204 Cal. 668 [269 Pac. 542, 60 A. L. R. 299], the court said: "The test of control means complete control, and we must carefully distinguish between authoritative control and mere suggestion as to detail." See, also, *Chicago etc. Ry. Co.* v. *Bond*, 240 U. S. 449 [36 Sup. Ct. 403, 60 L. Ed. 745], which is cited and approved in *Barton* v. *Studebaker Corp.*, 46 Cal. App. 707 [189 Pac. 1025]; *Bohanon* v. *James McClatchy Pub. Co.*, 16 Cal. App. (2d) 188 [60 Pac. (2d) 510]; *Brosius* v. *Orpheum Theatre Co.*, 16 Cal App. (2d) 61 [60 Pac. (2d) 156]. In the Brosius case, which was decided by this court, the plaintiff contracted to furnish the defendant a comedy cycling act. The trial court held that the plaintiff was not an employee but an independent contractor, and this court sustained the judgment, for the reason that the "defendant did not have complete control over plaintiff. . . . Defendant did not have the right to control the number or size of the wheels used or the speed or direction in which they were to be propelled."

It is only in the application of the law to the evidence, when a fact finder is attempting to determine facts, that there is any difficulty.

We wish also to emphasize that the law as to what constitutes the relationship of master and servant is not necessarily stated in that mass of cases, usually cited in the briefs

when a question of this character is before a court, which take section 2009 of the Civil Code for granted or overlook it and laboriously discuss the facts and circumstances of each individual case as to whether the relationship exists,—and vaguely, if at all, discuss the real question, i. e., whether or not there is any substantial evidence in the record to sustain the finding of the trial court. Such cases almost uniformly, and rightly so, uphold the findings of the trial court on the question, but in almost all instances they would have and should have upheld the findings of the trial court if the findings had been the opposite. Such cases churn and grind together and settle down at the bottom of the ocean of jurisprudence, to form a conglomerate stratum which has no more texture or strength than a geological conglomerate often seen by the side of the road. In this connection see *Koeberle* v. *Hotchkiss*, 8 Cal. App. (2d) 634 [48 Pac. (2d) 104]. It would be well in almost all instances if such questions were handled with the terse words of the less than two-page opinion of *La Franchi* v. *Industrial Acc. Com., supra*: "It is apparent from the foregoing brief survey of the evidence that the record contains some testimony tending to support the employee theory."

In this connection we wish also to say that the law of this case is not necessarily stated in the case of *Hammel* v. *Keehn*, 18 Cal. App. (2d) 387 [63 Pac. (2d) 1165], which defendant Howard primarily and confidently relies upon for an affirmance, which is more nearly in line with the instant case than other cases which have been cited to us, and which as to the facts is more nearly on all fours with the instant case.

In this connection also we wish to emphasize that no particular fact or circumstance has been held to be conclusive in determining the question whether a person is or is not an employee. A provision requiring plaintiff to be present at rehearsals does not establish such relationship. (*Brosius* v. *Orpheum Theatre Co., supra*.) A provision fixing wages and hours of employment by an operating schedule is not conclusive. (*Moody* v. *Industrial Acc. Com., supra*.) A provision for the use of salary checks in payment for the services rendered is not conclusive. (*Lillibridge* v. *Industrial Acc. Com.*, 4 Cal. App. (2d) 237, 241 [41 Pac. (2d) 856]; *Los Flores S. Dist.* v. *Industrial Acc. Com.*, 13 Cal. App. (2d) 180 [56 Pac. (2d) 581].) Even a provision for the right of

immediate discharge is not conclusive. (*Bohanon* v. *James McClatchy Pub. Co., supra; Peters* v. *California B. & L. Assn.*, 116 Cal. App. 143 [2 Pac. (2d) 439] ; *Pryor* v. *Industrial Acc. Com.*, 186 Cal. 169 [198 Pac. 1045], and cases cited.) But all of these facts and circumstances as well as others are considered evidence bearing upon the question of such relationship. For illustration, in the case of *Peters* v. *California Bldg. & Loan Assn.*, 116 Cal. App. 143 [2 Pac. (2d) 439], the court said : ''As evidence of the nature of the relationship existing between the association and Peters, there is the fact that Peters received no definite compensation, only commissions; that the automobile used by him in soliciting his customers was his own property and that he paid the expense of its maintenance and care and for the gasoline necessary to run it, together with all his other expenses.''

It is the custom of this court when confronted with a question of this nature to merely say, if it be so, that in our view there is substantial evidence to sustain the finding of the trial court. In the rare instances in which we do not sustain a finding of fact we set forth our reasons with particularity. In the instant case we would ordinarily be content with the statement that in our view there is substantial evidence to sustain the finding ; but unfortunately we find ourselves in disagreement in the decision of the question. (We would be more than human if we did not sometimes disagree.) For that reason the majority will now set forth some of the facts and circumstances in evidence which sustain a finding that at the time of the accident the defendant Stewart was not acting as an employee of defendant Howard Company, but was an independent contractor. In extenuation we wish to say that our failure to agree also accounts for this long and laborious opinion.

The following facts and circumstances in evidence tend to sustain the finding of the trial court : Prior to the time of the accident the driver, Stewart, and one Phillips were managers of the Cycle Corporation which picked up and delivered automobiles for the defendant Howard Company pursuant to a contract wherein the corporation occupied the relation of independent contractor. This corporation went into bankruptcy and thereupon Stewart and Phillips orally offered to handle the Howard Company's pick-up and delivery service on the old basis of the corporation contract, with the exception

that the Howard Company was to furnish Stewart and Phillips with compensation insurance. This offer was accepted and Stewart and Phillips commenced the pick-up and delivery of cars in the uniforms they had worn under the Cycle Corporation. For each car handled they received fifty .cents or one dollar, the rate depending upon specified zones. There was no minimum guarantee. In performing under this contract Stewart and Phillips used their own motorcycles. They paid all the cost of operating the motorcycles, including the cost of gasoline, oil and repairs. There was no fixed quitting time or lunch hour for these men, no fixed hour at which Stewart was to stop work at the end of the day, no extra pay for overtime.

The evidence was that in picking up and delivering cars Stewart and Phillips used their own individual discretion as to the route to be followed. They had a right to follow main traffic arteries or side streets, a dangerous route or a safe one. They were not in any sense under the direction and control of the company in this regard.

The evidence was that when Stewart was waiting for an opportunity to call for or deliver cars he was accustomed to do odd jobs around the shop, but this work was not compulsory, and when he did such work he was paid on an hourly basis—not by the month, or week or even by the day. He received payments semimonthly in the form of a so-called salary check, which check included the amounts coming to him for pick-up and delivery service together with pay for the hours spent on odd jobs while waiting for work under his contract. Under this contract if there were no cars he received no compensation. If the expenses incurred by him exceeded the amount received the loss fell on him. His profits might be large or small or he might even suffer a loss, depending upon the number of orders he received and the expense involved. We will not argue the strength of the above evidence. We are content to set it forth so that it may speak for itself.

There were other circumstances .in evidence from which the inference might possibly have been drawn that Stewart was an employee. But we are not engaged in parading conflicting circumstances in order to judge of their weight.

In addition to the finding of the ultimate fact, that at the time of the happening of the accident the defendant

Stewart was not engaged in the performance of his duties as an employee of the defendant Howard Company, the court in other paragraphs made many probative findings, most of which have been set out in our recital of the evidence tending to sustain the finding of ultimate fact. Included were several other probative facts which might be considered inconsistent with the ultimate fact, and the final contention of the plaintiffs is that "a judgment founded upon a purported finding of an ultimate fact which is inconsistent with probative facts previously found, upon which the ultimate fact was based, is unsupported by the findings and must be reversed". This contention does not accurately state the law which is applicable here. The applicable law is clearly and succinctly stated and the cases collected in 2 California Jurisprudence at page 872. It would seem almost that the editors had gathered the language together for the very purpose of this case. "In reviewing the sufficiency of the findings to support the judgment, regard will be had to the ultimate facts found, and not to mere probative facts, which are not shown by the findings to be the only facts proved and from which alone the court finds the ultimate facts. In the absence of such showing, the mere circumstance that some of the probative facts are inconsistent with the ultimate facts will not prevent the ultimate facts from controlling. And whenever the facts found are such as might authorize different inferences therefrom, it will be presumed that the inference made by the trial court was one that will uphold rather than defeat the judgment. In such case the appellate court will not draw from those facts any inference of fact contrary to that which might have been drawn by the trial court for the purpose of rendering its judgment." (2 Cal. Jur. 872, and vol. 1, Ten-year Supp. 528, 529.)

Judgment affirmed.

McComb, J., concurred.

WOOD, J., Dissenting.—I dissent. This is an appeal by plaintiffs, legal representatives of the estate of Albert B. Washko, deceased, from a judgment in favor of Howard Automobile Company of Los Angeles. Albert B. Washko, a pedestrian, was killed in the evening of November 9, 1933, while in the act of crossing the intersection at Virgil Avenue

and Lockwood Street in the city of Los Angeles. Plaintiffs sued the owner of the car, defendant Binkert, the driver of the car, defendant Stewart, and the Howard Company, alleging that Stewart was an employee of the Howard Company engaged at the time of the accident in the line of his duty. The cause was tried before the court without a jury. Judgment was entered in favor of plaintiffs against Binkert in the sum of $5,000 and against Stewart in the sum of $12,000 and in favor of defendant Howard Automobile Company of Los Angeles. On a separate appeal filed by defendant Stewart we are this day filing an opinion and order affirming the judgment as to defendant Stewart. (*Washko et al.* v. *Stewart . et al., ante,* page 345 [67 Pac. (2d) 151.)

Defendant Binkert purchased a Pontiac automobile from the Howard Company under an agreement which provided for the servicing of the car by the seller after it had been driven 500 miles. The car was delivered to the Howard Company and after the completion of the servicing was being returned to Binkert when the accident occurred. The issue involved in this appeal concerns the nature of the arrangement under which Stewart was returning the car, whether in the capacity of employee or independent contractor.

Stewart and one Phillips had formerly organized a corporation known as the Cycle Auto Corporation and had engaged in the business of delivering automobiles at a flat rate which varied in accordance with the zones in which the deliveries were made. The corporation had made deliveries for the Howard Company, but it became bankrupt and thereafter Stewart and Phillips individually applied to the Howard Company for work. An arrangement was made whereby Stewart should deliver automobiles at the same rates which had been formerly charged according to the zones of delivery, the rate for the delivery of the car in the zone of the Binkert residence being 50 cents. Stewart was to furnish his own motorcycle and gasoline. The Howard Company carried compensation insurance upon Stewart as an employee. Stewart was obliged to report for work at the Howard Company's plant each morning at 8 o'clock and was obliged to take instructions from the foreman as to the order in which pick-ups and deliveries were to be made. Stewart was required to remain on duty until the deliveries and pick-ups for the day were completed. Other deliverymen besides Stewart and

Phillips were engaged in the same work. When Stewart was not engaged in deliveries and picking up automobiles he would do other work about the shop of the Howard Company, such as washing cars and running errands, and for this work he was paid on an hourly basis. Testimony was offered on the part of the defense that the performance of this other work was not compulsory. Stewart was listed on the books of the Howard Company as a deliveryman and was paid with salary checks of the company which were in the same form as checks used in the case of the employees of the company. On the face of a salary check admitted in evidence appears the following: "Indorsement of this check by payee acknowledges receipt in full of salary to October 31, 1935, inclusive." On the books of the Howard Company appears the following: "Date employed 3/15/33."

In my opinion the uncontradicted testimony conclusively shows that Stewart was an employee rather than independent contractor. (Civ. Code, sec. 2009.) An independent contractor is one who in rendering services exercises an individual employment or occupation and represents his employer only as to the results of the work and not as to the means whereby it is to be accomplished. (*May* v. *Farrell*, 94 Cal. App. 703 [271 Pac. 789].) A well-considered opinion is to be found in *Chapman* v. *Edwards*, 133 Cal. App. 72 [24 Pac. (2d) 211], where the court upheld a verdict based on the allegation that the owner of a truck who was engaged to haul dirt by the load was an employee rather than an independent contractor. In that case the court gave this definition: "An independent contractor is one, who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer except as to the result of the work." It was pointed out that "there was no obligation upon him (the driver) to take any dirt nor was there any liability imposed upon or assumed by him if he chose not to haul. Likewise, there was no obligation upon Edwards Bros. to furnish sufficient dirt to load the truck nor was there any obligation on Edwards Bros. to continue the employment for any period. It seems generally conceded that a test in determining whether a person employed to do certain work is an independent contractor or a mere servant is the control over the work which is reserved by the employer. The power of the employer to terminate

the employment at any time is a strong circumstance tending to show the subserviency of the employee, since it is incompatible with the full control of the work usually enjoyed by an independent contractor. Perhaps no single circumstance is more conclusive to show the relatic nship of an employee than the right of the employer to end the service whenever he sees fit to do so.'' The court fur ther pointed out that the real test by which to determine w' ether a person is acting as the servant of another is to ascer in whether he was subject to such person's orders and cor rol and was liable to be discharged for disobedience or misc nduct.

In *May* v. *Farrell, supra,* the issi e turned on the question whether one Farrell was an employe of the appellant corporation. Farrell was employed to sel automobiles for the corporation on commission. He was re quired to report at a fixed hour each morning and attend a dail sales meeting. He used his own automobile. In case his serv ces were not satisfactory he could be discharged at any time. In upholding the implied finding of the jury that Farrell was n employee the court said: ''The fact that a certain amount f freedom of action is inherent in the nature of the work do not change the character of the employment where the employ has general supervision and control over it.'' The court further ld that the fact that the salesman furnished his own transportation did not affect his status as an employee. In *Weinberg* v. *Clark,* 120 Cal. App. 362 [8 Pac. (2d) 164], a case in which the trial was without a jury, the court found that the driver of the automobile involved in the accident, who was an automobile salesman working on a commission basis, was not an employee of his codefendant. The judgment in favor of the employer was reversed, the reviewing court holding that the evidence failed to establish that the driver was an independent contractor. In *Hillen* v. *Industrial Acc. Com.,* 199 Cal. 577 [250 Pac. 570], a case in which a workman was engaged in shingling at a certain price per thousand shingles the court said: ''One of the best tests to determine whether the relation is that of an independent contractor or that of employer and employee is the right of control. It is not the fact of actual interference with the control, but the right to interfere, that makes the difference between an independent contractor and a servant or agent.'' In *Hartford Acc. & Ind. Co.* v. *Industrial Acc. Com.,* 93 Cal. App. 313 [269 Pac. 733], the applicant was

injured while soliciting prospective purchasers for a real estate company. She received as compensation $2 for each person whom she might interest in the property and cause to visit the land held for sale, plus commission on any sale she might make. She was not limited to any territory in which she might work and the company did not furnish her with the names of people to interview. She had no specific hours in which to work but was required to telephone the office each morning and attend a meeting for the instruction of salesmen each Monday morning. She was not permitted to work for any other real estate company. The court upheld an award in her favor based on the finding of the commission that she was an employee rather than an independent contractor. (See, also, *Dillon* v. *Prudential Ins. Co. of America,* 75 Cal. App. 266 [242 Pac. 736] ; *George* v. *Chaplin,* 99 Cal. App. 709 [279 Pac. 485] ; *Press Pub. Co.* v. *Industrial Acc. Com.,* 190 Cal. 114 [210 Pac. 820] ; *Smith* v. *Fall River Joint Union High School Dist.,* 118 Cal. App. 673 [5 Pac. (2d) 930].)

Respondent relies upon the case of *Hammel* v. *Keehn,* 18 Cal. App. (2d) 387 [63 Pac. (2d) 1165]. That case is easily distinguishable from the case at bar. The driver, Keehn, was an employee of a copartnership which contracted with two different automobile houses to make deliveries of automobiles. One of these houses was the defendant Kaiser Bros. The court said: ''They charged a flat rate by zones for the service thus rendered, presenting bills twice a month to each agency, then dividing the proceeds among the partners. So far as appears, there was no agreement which bound them to respond to a call nor which required either service agency to call them rather than obtain or return an automobile by some other medium. Each call was thus a new contract, although its terms were to be found not in freshly uttered words, but in the recognized practice which repeated contracts had established.'' Under its contracts with the copartnership, Kaiser Bros. could not call upon Keehn for his individual services, nor was Keehn subject to discharge by Kaiser Bros. Keehn was not required to devote all of his time to Kaiser Bros. who had no right to exercise control over his work. On the other hand, Keehn was subject to control by the copartnership which employed him. In the case at bar Stewart, as also the other deliverymen, was required to remain on duty

at the plant of the Howard Company until his work was finished for the day. He was required to furnish individual services and to take instructions from the company's foreman. The company had the right to exercise control over his work and could terminate his employment at any time. The company carried compensation insurance upon Stewart, listed him among its employees, and paid him for his labor by the hour when he was not engaged in delivering cars. The Howard Company stresses the point that Stewart had the right to select the route he should take in making deliveries of cars. As is pointed out in *May* v. *Farrell, supra,* the fact that a certain amount of freedom is inherent in the nature of the work does not change the nature of the employment where the employer has general supervision and control over it. Certainly the Howard Company was required to deliver Binkert's car promptly and had no right to divert the car to some other direction than that which would promptly bring about its return to the owner. Likewise Stewart was obliged to return the car to the owner promptly and by the most feasible route. A chauffeur regularly employed on a full-time basis to drive a car for his employer would not lose his status as an employee in following directions to meet his employer at a certain location if in doing so he should be given the right to select the street route by which to drive the car to its destination. Even mechanics who are employed by the hour to perform labor are given a certain amount of freedom of action as regards the tools to be used. Such freedom of action is inherent in the nature of their work. So, also, such freedom of action as was allowed Stewart was inherent in the nature of his work.

During the portion of the day in which Stewart was washing cars and receiving compensation on an hourly basis he was unquestionably an employee. The change in his work from washing a car on an hourly basis to making a delivery at a flat rate did not transform him from employee to independent contractor.

In finding VIII the trial court found that Stewart was not engaged in the performance of his duty as an employee of the Howard Company. This finding involves a question of mixed law and fact. (*Hillen* v. *Industrial Acc. Com., supra.*) But in findings VII and IX the court detailed the facts of the employment substantially as set forth herein. In *Wallace*

*Ranch W. Co.* v. *Foothill D. Co.,* 5 Cal. (2d) 103 [53 Pac. (2d) 929], the court said: "It was formerly the rule in this state that where two findings on an essential fact are conflicting, neither can be relied upon to support the judgment. (*Moody* v. *Newmark & Edwards,* 121 Cal. 446 [53 Pac. 944]; *Fanta* v. *Maddex,* 80 Cal. App. 513 [252 Pac. 630].) It is also well settled, however, that when a general finding conflicts with a special finding, the latter controls." The finding contained in finding VIII is a finding of an ultimate fact which in my opinion is inconsistent with specific facts found in findings VII and IX. In my opinion finding VIII is not supported by the evidence and must give way to the specific facts elsewhere found by the court. Under the circumstances here shown the purported finding number VIII should be treated as an erroneous conclusion of law. "A general finding, drawn as a conclusion from facts previously found, cannot stand if the specific facts do not support it." (*Savings & L. Soc.* v. *Burnett,* 106 Cal. 514 [39 Pac. 922]). See, also, *McKay* v. *Gesford,* 163 Cal. 243 [124 Pac. 1016, Ann. Cas. 1913E, 1253, 41 L. R. A. (N. S.) 303].)

In my opinion the judgment as to defendant Howard Automobile Company of Los Angeles should be reversed.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 10, 1937.